FEDERAL TRADE COMMISSION,
Petitioner,

v.

John T. MENZIES, President, Crosse & Blackwell Company, Defendant.

FEDERAL TRADE COMMISSION,
Petitioner,

v.

Charles P. McCORMICK, President, McCormick & Company, Inc.,
Defendant.

FEDERAL TRADE COMMISSION,
Petitioner,

v.

Samuel H. HOFFBERGER, President, Pompeian Olive Oil Corporation,
Defendant.

Nos. 36, 37, 38.

United States District Court
D. Maryland.
Aug. 30, 1956.

Andrew C. Goodhope, Atty.; Federal Trade Commission, Washington, D. C., and Walter E. Black, Jr., U. S. Atty., Baltimore, Md., for petitioners.

James W. Cassedy, Washington, D. C., A. Adgate Duer and Niles, Barton, Yost & Dankmeyer, Baltimore, Md., for John T. Menzies, President of the Crosse & Blackwell Co., and the Crosse & Blackwell Co.

G. C. A. Anderson, Baltimore, Md., and James W. Cassedy, Washington, D. C., for Charles P. McCormick, President, McCormick & Co., Inc.

James W. Cassedy, Washington, D. C., and Morton J. Hollander, Baltimore, Md., for Samuel H. Hoffberger, President, Pompeian Olive Oil Corp., and Pompeian Olive Oil Corp.

THOMSEN, Chief Judge.

The principal question involved in these three cases is whether the Federal Trade Commission has the power to issue subpoenas duces tecum in proceedings before the Commission based upon alleged violations of subsection (d) of sec. 2 of the Clayton Act, 38 Stat. 730, as amended by the Robinson-Patman Act, 49 Stat. 1526, 15 U.S.C.A. § 13.

### The Proceedings.

In November, 1955, the Commission issued three complaints, against Crosse & Blackwell Company, McCormick & Company, Inc., and Pompeian Olive Oil Corporation, respectively, each of which charged the respondent with price discrimination in violation of subsection 2 (d) of the Clayton Act, as amended, and alleged, as an example, that during 1955 the respondent contracted to pay and did pay certain sums of money to the Food Fair Stores, Inc., of Philadelphia, Pennsylvania, as compensation or as an allowance for advertising or other services or facilities furnished by or through such customer in connection with its offering for sale or sale of products sold it by the respondent, and that such compensation or allowances were not offered or otherwise made available by such respondent on proportionately equal terms to all other customers competing with Food Fair Stores, Inc., in the sale and

distribution of the respondent's products. Each respondent was notified of a hearing to be held before a hearing examiner of the Commission on the charges set forth in the complaint, at which time the respondent would have the right to appear and show cause why an order should not be entered requiring it to cease and desist from the violations of law charged in the complaint. Each respondent filed an answer denying that it had violated the Clayton Act, as charged.

Before the answers were filed, in each case, a subpoena was served upon the president of the respondent corporation, as such president, directing him to appear and testify before a hearing examiner and to produce certain books, records, accounts, invoices and other documents described in the subpoena. These records dealt with sales to customers in the Philadelphia, Baltimore, and Washington sales areas during an 18-month period. Each respondent corporation moved the examiner to quash the subpoena; the motions were denied by the examiner; each respondent then appealed to the Commission from the examiner's ruling; and these appeals were denied. Thereafter, in March, 1956, hearings were held in Baltimore, Maryland, by an examiner. The several presidents failed to appear, but in each case an officer of the respondent, having custody of the documentary data called for by the subpoena, appeared and declined\to produce the records demanded by the respective subpoenas.

On March 29, 1956, the Federal Trade Commission, through its duly authorized attorney, filed in this court three applications for orders requiring the presidents of the respective corporations to appear before a hearing examiner, to produce the documentary evidence described in the subpoenas and to answer all questions relative and material to and necessary and proper to the conduct of the aforesaid proceeding before the Commission, or to show cause why they should not be so ordered.

Each president has filed an answer setting up various reasons why the relief prayed should not be granted. Their counsel have briefed and argued the question whether the Commission has the power to issue subpoenas in proceedings based upon alleged violations of sec. 2 of the Clayton Act, as distinguished from proceedings based upon violations of sec. 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., or investigations conducted under sec. 6 of that Act. The Commission takes the position that it has the power to issue subpoenas under sec. 9 of its organic act, 38 Stat. 722, 15 U.S.C.A. § 49, and that this power is recognized by sec. 11 of the Clayton Act, 38 Stat. 734, as amended, 15 U.S.C.A. § 21.

The answers also raised the question whether the subpoenas were too broad and whether they deprived respondents of their rights under the Fourth Amendment to the Constitution of the United States. The answer of Charles P. McCormick, president of McCormick & Company, Inc., also raised the point that the corporation as such is a necessary party defendant in this court proceeding, and has not been made a party.

### The Statutes.

"An Act To create a Federal Trade Commission, to define its powers and duties, and for other purposes", Sept. 26, 1914, c. 311, 38 Stat. 717, and "An Act To supplement existing laws against unlawful restraints and monopolies, and for other purposes", commonly known as the Clayton Act, Oct. 15, 1914, c. 323, 38 Stat. 730, were passed by the 63d Congress as parts of a plan to strengthen the laws against unfair trade practices. They are *in pari materia,* and should be construed together; Sutherland, Statutory Construction, 3d ed., sec. 5205; United States v. Sweet, 245 U.S. 563, 38 S.Ct. 193, 62 L.Ed. 473; United States v. Fixico, 10 Cir., 115 F.2d 389. Aside from the provisions of the acts themselves, this close relationship appears clearly from the debates in Con-

gress at the time the two acts were under discussion. See note 3, below.

Secs. 1–4 of the Federal Trade Commission Act, 15 U.S.C.A. §§ 41–44, established the Commission. Sec. 5(a) declared unlawful "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce," empowered and directed the Commission to prevent persons, firms or corporations, with certain exceptions, from using such unfair or deceptive methods, acts or practices; sec. 5(b) provided for administrative proceedings by the Commission leading to an order requiring offenders to cease and desist from using such methods, acts or practices; secs. 5(c–e) provided for court review of such orders; sec. 5(f) provided several methods by which complaints, orders and other processes of the Commission under that section may be served; sec. 5(g–k) stated when an order of the Commission to cease and desist shall become final; sec. 5(l) provided a civil penalty for violation of such orders.

Sec. 6 granted power to the Commission, *inter alia*, to investigate from time to time the organization, business conduct, practices and management of corporations engaged in commerce, sec. 6 (a); and upon the direction of the President or Congress to investigate and report the facts relating to any alleged violations of the anti-trust Acts by any corporation, sec. 6(d), as modified by 48 Stat. 291, 15 U.S.C.A. § 46a. Secs. 7 and 8 are immaterial here.

Sec. 9 provided: "For the purposes of this Act the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. * * * Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any corporation or other person, issue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof."[1]

Sec. 10 provided for offenses and penalties; and sec. 11 stated: "Nothing contained in this Act[2] shall be construed to prevent or interfere with the enforcement of the provisions of the anti-trust Acts or the Acts to regulate commerce, nor shall anything contained in the Act be construed to alter, modify, or repeal the said antitrust Acts or the Acts to regulate commerce or any part or parts thereof." Secs. 12 to 18 dealt with court proceedings to prevent the dissemination of false advertising.

The Clayton Act, as originally enacted, Oct. 15, 1914, c. 323, 38 Stat. 730, contained 26 sections. Sec. 2 prohibits price discriminations, such as those alleged in the complaints filed by the Federal Trade Commission against Crosse & Blackwell, McCormick & Company, and Pompeian. As amended, June 19, 1936, c. 592, 49 Stat. 1526, the Robinson-Patman Act, sec. 2 is codified as 15 U.S.C.A. § 13. Secs. 3, 7 and 8 prohibit other specific trade practices and corporate acts. Sec. 11, 15 U.S.C.A. § 21, vests authority to enforce compliance with secs. 2, 3, 7 and 8 in the Interstate Commerce Commission with respect to one class of corporations, in the Federal Communica-

---

1. In the United States Code (1952 ed.) the words "for the purposes of this Act" were changed to read "For the purposes of sections 41–46 and 47–58 of this title". No statute making such change had ever been passed, but the difference in the wording is not important in this case, since the broad powers of the Commission are set out in secs. 41–46.

2. Also changed in the Code to read "sections 41–46 and 47–58 of this title".

tions Commission, the Civil Aeronautics Board, and the Federal Reserve Board with respect to certain other classes, and in the Federal Trade Commission with respect to the rest; such authority to be exercised in accordance with certain procedures set out in sec. 11. These procedures include hearings before the respective enforcement agencies, commissions and boards, orders to cease and desist, enforcement of such orders by the appropriate United States courts of appeals, and review of such orders by those courts, upon transcripts of the entire record, including all testimony. They are quite similar to the procedures set out in sec. 5 of the Federal Trade Commission Act.

Sec. 11 of the Clayton Act contains the provisions: "Complaints, orders, and other processes of the Commission or Board under this section may be served" in any one of several ways specified. This paragraph is essentially similar to subsection (f) of sec. 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45. Neither sec. 11 of the Clayton Act nor sec. 5 of the Federal Trade Commission Act contains a specific grant of power to issue subpoenas. That power is granted in sec. 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 49.

Discussion.

Defendants argue that since the Clayton Act does not specifically grant subpoena power to the Federal Trade Commission and the other enforcement agencies listed in sec. 11 of that Act, 15 U.S.C.A. § 21, the Federal Trade Commission cannot use, in a proceeding charging violation of sec. 2 of the Clayton Act, the subpoena power granted it by sec. 9 of its organic act, 15 U.S.C.A. § 49.

■ It is true that the Federal Trade Commission is an administrative agency, and has no powers except those granted it by Congress. It is also true that its power to issue subpoenas is limited to the purposes of the Act. See 15 U.S.C.A. § 49 and note 1, above. But the purposes of the Act are very broad, and include the prevention of unfair methods of competition, sec. 5, and the investigation of business practices of corporations, sec. 6. The Commission is given the power to issue subpoenas in connection with *any* matter under investigation, sec. 9. 15 U.S.C.A. §§ 45, 46, 49.

■ Defendants concede that the Commission can issue subpoenas (a) in aid of its power to prevent unfair methods of competition, under sec. 5 of the Federal Trade Commission Act, or (b) in aid of its power to investigate the practices of corporations under sec. 6 of that Act. It follows that, assuming the subpoenas involved in this case are not unreasonably broad, they could have been validly issued by the Commission (a) if the complaint had charged a violation of sec. 5 of the Federal Trade Commission Act, instead of a violation of sec. 2 of the Clayton Act, or (b) had charged a violation of both acts, as was done in E. B. Muller & Co. v. Federal Trade Comm., 6 Cir., 142 F.2d 511, and Carter Carburetor Corp. v. Federal Trade Comm., 8 Cir., 112 F.2d 722, or (c) if they had been issued in aid of an investigation before the filing of a complaint charging violation of sec. 2 of the Clayton Act. Automatic Canteen Co. of America v. Federal Trade Comm., 346 U.S. 61, 79, 73 S.Ct. 1017, 97 L.Ed. 1454. Such an investigation might have been very broad; the complaints in these cases had the effect of narrowing the scope of the investigation. The issuance of the complaint did not abrogate the power of the Commission to investigate violations of the laws committed by Congress to its jurisdiction. See Federal Trade Commission v. Miller's National Federation, 60 App. D.C. 66, 47 F.2d 428, 429.

To avoid the obvious inequity of their position, defendants argue that the specific provisions of sec. 2 of the Clayton Act prohibiting price discrimination withdraw those offenses from the more general provisions of sec. 5 of the Federal Trade Commission Act prohibiting unfair methods of competition and unfair acts or practices, and limit the Commission to the express powers granted it

by the Clayton Act. The Supreme Court has held, however, that what violates the Clayton Act also violates sec. 5 of the Federal Trade Commission Act. Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 609, 73 S.Ct. 872, 97 L.Ed. 1277; Federal Trade Comm. v. Motion Picture Advertising Service Co., 344 U.S. 392, 73 S.Ct. 361, 97 L.Ed. 426. The provisions of the two acts, as well as the debates in Congress at the time the Federal Trade Commission Act and the Clayton Act were pending, show clearly that the two acts are *in pari materia* and that Congress intended the Federal Trade Commission to have a major part in enforcing the provisions of the Clayton Act.[3] Defendants' argument would leave the Commission virtually helpless to carry out this responsibility.

However unlikely it may be that Congress intended to emasculate the Commission in one of the major fields of its activity, by denying to it the power to issue subpoenas in aid of hearings the Act requires it to hold, we must look at the language of the statutes to see if they do have that effect. I conclude that they do not.[4]

▮▮▮ When we read the two acts together, as we must, we find that the Clayton Act recognizes the power of the Commission and the courts to issue subpoenas, and does not attempt to grant them those powers, although it does specify how the subpoenas issued by the Commission and the other enforcement agencies shall be served, sec. 11, and to what districts the subpoenas issued by the courts shall run, sec. 13. Sec. 11 of the Clayton Act specifies in general terms the procedure by which the various enforcement agencies shall enforce the condemnation of price discrimination contained in sec. 2, and the other matters condemned by secs. 2, 3, 7 and

8. It does not attempt to write a complete code of practice for the five different enforcement agencies. Each of them has its own organic act, and its own methods and procedures. The Clayton Act wisely omits any effort to cover all those details. It provides for hearings by the Federal Trade Commission, which would be futile or unfair without the subpoena power, which even before the Administrative Procedure Act was utilized by accused corporations as well as by the Commission. Sec. 11 of the Clayton Act, 15 U.S.C.A. § 21, recognizes that the various enforcement agencies may issue subpoenas and other types of process, since it provides how "Complaints, orders, and other processes" may be served. As noted above, this provision is similar to the provision for the service of "Complaints, orders, and other processes" in the Federal Trade Commission Act, 15 U.S.C.A. § 45(f). It seems clear that the word "processes" in both of these sections was intended to include subpoenas ad testificandum and subpoenas duces tecum.

If there is any ambiguity, we may properly consider the uniform administrative practice of the Commission to issue such subpoenas in proceedings filed to enforce the provisions of the Clayton Act. Beltone Hearing Aid Company, F.T.C. Docket 5825; Standard Motor Products, Inc., F.T.C. Docket 5721; The Maico Co., Inc., F.T.C. Docket 5822. See also Automatic Canteen Co. of America v. Federal Trade Comm., 346 U.S. 61, 79, 73 S.Ct. 1017, 97 L.Ed. 1454. In Norwegian Nitrogen Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796, the Supreme Court, speaking through Mr. Justice Cardozo, said: "Administrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons if the scope of the

3. House Report No. 533, 63d Cong., 2d Sess., p. 7; Cong.Rec. p. 12,918, July 30, 1914; 63d Cong., 2d Sess.; Cong.Rec. p. 14,222, 63d Cong., 2d Sess., Aug. 25, 1914; Cong.Rec. pp. 14,321–14,323, 63d Cong., 2d Sess., Aug. 27, 1914.

4. This conclusion is supported by the unreported decision of Judge Julius J. Hoffman in Federal Trade Commission v. William T. Reed, President, Reed Candy Co., (D.C.N.D.Ill.E.D., 56 C. 843), which is the only case precisely in point to which my attention has been directed.

command· is indefinite and doubtful. \* \* \* The practice has peculiar weight when it involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new." Despite the common knowledge of the fact that the Commission regularly issued subpoenas in cases charging violation of sec. 2 of the Clayton Act, Congress did not make any attempt to change the practice when it passed the Robinson-Patman Act.

There is no merit in the contention that McCormick & Company, Inc., must be joined as a party defendant in the proceeding in this court which has been brought against "Charles P. McCormick, President, McCormick & Company, Inc.". The subpoena which was directed to Charles P. McCormick, President, McCormick & Company, Inc., was a double-barreled subpoena, calling on him (1) to appear and testify and (2) to produce certain records of the corporation. For many years it has been the custom to issue subpoenas in that form in this court, and in the Maryland state courts, and apparently it has been the practice before the Commission. If in any case the officers and directors of a corporation fear that its ·interests are not being protected by its president, the corporation may ask leave to intervene in the proceedings. But in this case the attorney who is appearing for the president is the attorney who has represented the corporation for many years.

As noted above, the subpoenas call upon the respective presidents (1) to appear and testify, and (2) to produce certain records of the corporation. The Commission is clearly entitled to an order requiring the defendants to appear and testify.

The problem with respect to the records is more difficult. See Hermann v. Civil Aeronautics Board, 9 Cir., 237 F.2d 359. The Federal Trade Commission and its duly authorized agent or agents are entitled to have access to all the records and other documentary evidence called for by the several subpoenas, for the purpose of examining and copying the same. 15 U.S.C.A. § 49. In its opinion denying respondents' appeals from the refusal of their motions to quash the subpoenas, the Federal Trade Commission stated:

"Also without merit are the appellants' contentions that the requirements of the challenged subpoenas are unreasonable and impinge on the respondents' constitutional rights. The appeals do not challenge the Commission's substantive authority to institute these proceedings or the lawful purpose thereof. The data and information requested in each of the subpoenas are limited to designated periods of time and confined to three metropolitan areas wherein each of the respondents apparently engages in the distribution of products; and the documents and information requested are clearly identified. The data's relevancy to the allegations of the complaints is apparent and the material requested appears necessary for disposition of the issues which will be presented for determination in each proceeding. In these circumstances, the directions of the subpoenas must be regarded as reasonable and valid."

I find that the records covered by the subpoenas are generally relevant to the matter under investigation. Their materiality can only be determined after they have been examined. Such an examination would involve no violation of defendants' rights under the Fourth Amendment. Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614; United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401; Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424.

I will direct the presidents of the several corporations to make all of the records covered by the subpoenas available to counsel for the Commission or

such other respresentative or representatives as the Commission may designate, for examination, analysis and copying. These examinations should be made at the offices of the respective corporations, unless counsel agree upon some other place as a matter of convenience. After such examination counsel for the Commission can decide which records he believes are material to the matter under inquiry and should be offered in evidence before the Commission or its hearing officer. There may be no difficulty in connection with the admission in evidence of these records or copies thereof made by counsel for the Commission. If it becomes necessary to issue further subpoenas duces tecum, to require the production before the hearing officer of any of the documents disclosed by the examination, such subpoenas should designate only those documents which are in the possession or under the control of the persons to whom the subpoenas are directed [5], and which are relevant and material to the issue.

Any other officers, agents or employees of the respective respondents may be subpoenaed before the Commission or a hearing examiner to testify with respect to the documentary evidence and with respect to any business, conduct or practices of the respondent which may be relevant and material to the matter under investigation.

No part of the documentary evidence should be made public and available to the competitors of the several respondent corporations unless it is necessary to do so in the proper enforcement of the law. If requested by the respondents, the Commission should follow its practice of placing the documents offered in evidence in a confidential file, in order to keep business secrets away

from the sight and knowledge of the respondents' competitors so far as it is practicable to do so in the discharge of the Commission's responsibilities under the law.

I will enter an order granting the relief prayed, subject to the qualifications set out in the preceding paragraphs.

---

5. Counsel for all parties in the instant cases have agreed that the presidents of the several corporations are not the persons having custody of the records, but that the persons who appeared at the hearing before the examiner, namely Sidney Thornton, Vice-president of Crosse & Blackwell Company; Ernest Issel,

Treasurer of McCormick & Company, Inc.; and Robert Ferris, Comptroller of Pompeian Olive Oil Corporation, are the persons having custody of the records of the respective corporations and are the persons to whom subpoenas duces tecum should be directed.