## UNITED STATES v. LEGG.
### No. 5511.

Circuit Court of Appeals, Fourth Circuit.
Nov. 11, 1946.

A. Garnett Thompson, Asst. U. S. Atty., of Charleston, W. Va., and James E. Palmer, Jr., Sp. Asst. to Atty. Gen. (Leslie E. Given, U. S. Atty., on the brief), for appellant.

No appearance for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

On December 15, 1930, an order was entered in the United States District Court for the Southern District of West Virginia in the criminal case of United States v. Porter, forfeiting the appearance bond of Porter, on which the instant appellee, Legg, was surety, Porter having failed to appear in answer to the indictment. Scire facias was awarded against both Porter and Legg but was executed only against Legg. On May 16, 1931, Porter having still failed to appear in spite of the issuance of two writs of capias, judgment on the bond was entered against Legg for $1,000, with interest from that date.

On May 21, 1946 (15 years after judgment against him on the bond) Legg filed a petition in the United States District Court for the Southern District of West Virginia, praying a remission of the judgment on the bond. On that same day, the District Court granted the remission upon the condition that Legg pay $100 to the Clerk of the Court. Legg duly made this payment. The United States objected to both the filing of the petition and the granting of the relief prayed for therein. From the judgment of remission in the court below, the United States has duly appealed.

Unquestionably there were equities here which favored Legg. Immediately after the forfeiture of the appearance bond, Legg, at considerable trouble and expense, procured the arrest of Porter in Ohio. Thereupon, the Ohio authorities requested a waiver of the federal capias in order that Porter might be tried in Ohio on a state charge more serious than the federal charge against him. This request was granted and

thereafter, on April 30, 1932, a nolle prosse was entered on the federal charge.

The appeal here is grounded solely on the question of the *power* of the District Court to enter the judgment of remission. To that question, one of considerable practical importance, we now address ourselves.

 Before the Federal Rules of Criminal Procedure went into effect on March 21, 1946, the power of the federal courts to remit judgments on forfeited appearance bonds stemmed from, and only from, Revised Statutes § 1020, 18 U.S.C.A. § 601. Under this statute, the first, and an essential, requisite for remission was a showing of non-willfulness of the principal's default. This was true, even though the surety had made herculean (but unsuccessful) efforts to secure the principal's appearance. Continental Casualty Co. v. United States, 314 U.S. 527, 62 S.Ct. 393, 86 L.Ed. 426; United States v. Hickman, 7 Cir., 155 F.2d 897; United States v. Reed, 5 Cir., 117 F.2d 808; United States v. Nordenholz, 4 Cir., 95 F.2d 756; Henry v. United States, 7 Cir., 288 F. 843, 32 A.L.R. 257.

It thus follows that prior to the effective date of the Federal Rules of Criminal Procedure, March 21, 1946, the District Court, acting under the old statute, utterly lacked power to enter the judgment of remission in the instant case. For there was presented to the court no evidence whatever to show the lack of willfulness in the default of the principal, Porter. In support of the authorities cited in the preceding paragraph, we might also cite the Committee's note 2 to Rule 46(f) of the Federal Rules of Criminal Procedure: "2. Subdivision (f) (2) changes existing law in that it increases the discretion of the court to set aside a forfeiture. The present power of the court is limited to cases in which the defendant's default has not been willful." Accordingly, the District Court's power to enter this judgment of remission exists if, and only if, such power can be derived from the Federal Rules of Criminal Procedure.

We set out in full Federal Rules of Criminal Procedure, Rule 46 (Bail), subdivision (f) (Forfeiture):

"(1) *Declaration.* If there is a breach of condition of a bond, the district court shall declare a forfeiture of the bail.

"(2) *Setting Aside.* The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture.

"(3) *Enforcement.* When a forfeiture has not been set aside, the court shall on motion enter a judgment of default and execution may issue thereon. By entering into a bond the obligors submit to the jurisdiction of the district court and irrevocably appoint the clerk of the court as their agent upon whom any papers affecting their liability may be served. Their liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the court prescribes may be served on the clerk of the court, who shall forthwith mail copies to the obligors to their last known addresses.

"(4) *Remission.* After entry of such judgment, the court may remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision."

It will clearly be seen that under (2) (Setting Aside), the court, without any showing (as was required under the old statute) of lack of willfulness on the part of the principal on the bond, may now set aside the forfeiture "upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture." This is, of course, a great liberalization, in favor of the obligors on the bond, of the old requirement. But, we find under (3) (Enforcement), the procedure for enforcement of the bond is also greatly liberalized against the obligors. "By entering into a bond the obligors submit to the jurisdiction of the district court and irrevocably appoint the clerk of the court as their agent upon whom any papers affecting their liability may be served. Their liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the court prescribes may be served on the clerk of the court, who shall forthwith mail copies to the obligors to their last known addresses." And the Committee's note on this reads: "3. The second sentence of paragraph (3) is similar to Rule 73(f) of the Federal

Rules of Civil Procedure. This paragraph also substitutes simple motion procedure for enforcing forfeited bail bonds for the procedure by scire facias, which was abolished by Rule 81(b) of the Federal Rules of Civil Procedure."

We think that subdivisions (f) (2) and (f) (3) should be read together. In other words, the added power of the court to remit under (f) (2) applies, and applies only, to judgments against obligors on these bonds, when the judgment is obtained under the new and simpler procedure prescribed by (f) (3). If the judgment was obtained under the old procedure, then, also, the old law of remission obtains, under which there can be no remission unless the default of the principal was devoid of willfulness. Under this view, (f) (2) and (f) (3) are correlated and balance each other. The obligors secure under (f) (2) added power of the court to remit; the Government obtains a simpler and easier procedure for securing judgment on the bond. Thus the two subdivisions are compensatory and part of an integral scheme. It would then seem to follow, as in the instant case, that when the Government was compelled to resort to the old procedure to secure judgment, then that judgment can be remitted only according to the old provision as to remission—i.e., solely upon the lack of willfulness in the principal's default.

This difference between the two procedures for judgment is clear in the case before us. Here judgment was secured only against Legg, the surety, and not against Porter, the principal; because the *scire facias* was served on Legg, the surety, and could not be served on Porter, the principal. Whereas, now, under the new procedure, there is no difficulty in securing judgment on the bond against both principal and surety, by simple motion without the need of either *scire facias* or independent action, with service of the motion and such notice as the court prescribes on the clerk of the court.

The conclusion we have thus reached appears to be fortified by the wording of subdivision (f) (4) (Remission) reading (italics ours): "After entry of *such judgment,* the court may remit *it* in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision." Note, again, the essential unity of paragraph (2) (prescribing the extent of the court's power to remit); paragraph (3) (prescribing the new and simple procedure for obtaining judgment on the bond against the obligors), and paragraph (4) (following paragraphs (2) and (3), specifically, in terms referring back to remission under paragraph (2).

Then, again, we think the words "such judgment" and the subsequent pronoun "it" in paragraph (4) must have been used deliberately in formulating this Rule.

Manifestly "*it*" refers to "such judgment." "*Such*" is a rather slippery word, thus defined in Black's Law Dictionary, 3d Ed.: "Alike, similar, of that kind, of the like kind; 'such' represents the object as already particularized in terms which are not mentioned, and is a descriptive and relative word, referring to the last antecedent."

And the definition in Funk and Wagnall's New Standard Dictionary reads:

"(*Such* is essentially a term of comparison, and to complete its force that with which comparison is made requires to be expressed, implied, or understood. When expressed, *as* or *that* is used before the subject of comparison as the correlative of *such; as, such* a voice *as* hers is unusual; the averment was *such that* it could not be gainsaid. Unlike attributive adjectives, it is not preceded by an article, but the indefinite article is often placed between it and the substantive it qualifies: as, *such* a man. Indefinite adjectives, as *all, some, few, many,* precede *such;* as, *all such* follies; *many such* disasters.)

"1. Of that kind; of the same or like kind; identical with or similar to something specified or implied; often with *as* or *that* (see note above); as, I know *such* teachers; *such* wit *as* this is rare. 2. Specif.; (1) being the same as what has been mentioned or indicated; as, *such* was the king's command. (2) Being the same in quality; having the qualities specified; as, let the truthful continue *such.* (3) Being the same as something understood by the speaker or the hearer, or purposely left indefinite: a con-

cise and elliptical use by which specification is avoided; as, the chief of *such* a clan."

Had the draftsmen of the Rule intended that the power of remission given in paragraph (2) should apply to judgments obtained (before the effective date of the Federal Rules of Criminal Procedure) under the old procedure, we think some such words as "any judgment" would have been used. But when in paragraph (4), immediately following procedural paragraph (3) and specifically referring in terms back to paragraph (2), the words "such judgment" are employed, we must infer that *"such judgment"* in the Rule means, and is limited to, judgment obtained under the simple procedure set out in paragraph (3). It thus seems logical that paragraphs (2), (3) and (4), when read together, indicate this: when the judgment on the bond was obtained under the old law and procedure, this judgment can be remitted only according to the old law of remission; when the judgment is obtained under the new law and procedure, then the new power of remission obtains.

Courts are not prone to give to statutes a retroactive effect. Especially does this seem to be true as to judgments entered many years prior to the effective date of the statute in question, unless the statute, either in terms or by manifest implication, clearly prescribes a retroactive effect. Legislation normally looks forward to the future, not backward to the past. As to the Rule in question another observation seems pertinent. There appears to be no limitation in time for the filing of a petition for remission of a judgment against the obligor on an appearance bond. Accordingly, if this be true and the decision of the District Court below be correct, the way is wide open for the filing of such petitions in literally hundreds of cases. Certainly, the desirability of such a result is open to very serious question. We are unwilling to believe that this result was intended by the draftsmen of the Federal Rules of Criminal Procedure, as liberal and humane as those Rules were designed to be.

Another argument is strongly pressed on us by the Government as a ground for the reversal of the judgment of remission en-

tered by the District Court below. Rule 59 of the Federal Rules of Criminal Procedure, after describing the effective date of the Rules, ends with this sentence: "They (the Rules) govern all *criminal proceedings thereafter commenced* and so far as just and practicable *all proceedings then pending."* (Italics ours.)

The Government insists that the instant case comes under neither of the two categories of this Rule. It is not, we are told, a "criminal proceedings thereafter commenced"; nor is it a proceeding "then pending," since a final judgment on the bond had been entered nearly 14 years before the effective date of the Rules. Since our interpretation of Rule 46, as set out above, requires a reversal of the judgment below, we do not find it necessary to pass on this question under Rule 59.

The judgment of the District Court below is reversed.

Reversed.