**FEDERAL TRADE COMMISSION,**
Petitioner-Appellant,

v.

**W. W. TUTTLE, Resident Manager, Ernst & Ernst, Respondent-Appellee.**

No. 232, Docket 24325.

United States Court of Appeals
Second Circuit.

Argued Jan. 16, 1957.

Decided April 2, 1957.

Medina, Circuit Judge, dissented.

Earl W. Kinter, General Counsel, Robert B. Dawkins, Asst. Gen. Counsel, John T. Loughlin, Atty., Washington, D. C. (Daniel M. Friedman, Atty., Department of Justice, Washington, D. C., of counsel), for appellant.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City (S. Hazard Gillespie, Jr., and Robert B. Fiske, Jr., New York City, of counsel), for appellee.

Before MEDINA and HINCKS, Circuit Judges, and LEIBELL, District Judge.

LEIBELL, District Judge.

The question to be decided on this appeal concerns the power of the Federal Trade Commission under Section 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 49, to subpoena documents and records of third parties "In the Matter of A. G. Spalding & Bros. Inc.," a corporation against which the Commission had filed a complaint, charging it with a violation of Section 7 of the Clayton Act, T. 15 U.S.C. § 18.[1] The District Court denied an application by the Commission for an order enforcing a

---

1. "No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."

subpoena *duces tecum* to compel Ernst & Ernst, the accountants for the Athletic Goods Manufacturers Association, to produce records of members of the Association in the possession of the accountants, and their own records relating thereto.

On December 8, 1955, the Commission issued a complaint against A. G. Spalding & Bros. Inc. charging it with a violation of Section 7 of the Clayton Act in that the Spalding corporation, one of the four largest manufacturers and distributors of athletic goods in the United States, had acquired on or about December 6, 1955, all of the outstanding capital stock of the Rawlings Manufacturing Company, which was also one of the four largest in that field. The complaint further charged, in some detail, that by the acquisition of the Rawlings stock, Spalding had eliminated a large competitor, and that the acquisition of the stock would have the effect of substantially lessening competition or tending to create a monopoly in the manufacture and distribution of athletic goods

In the course of the hearing, which an examiner of the Federal Trade Commission conducted in relation to the charges contained in the complaint, a subpoena *duces tecum* was served upon W. W. Tuttle of the accounting firm of Ernst & Ernst. The accounting firm, under an arrangement made with the Athletic Goods Manufacturers Association, prepared annually so-called "Census Reports" for the Association, based on information the accounting firm received from the Association's members in the form of statistical data and memoranda. Under its arrangement with the Association's members, Ernst & Ernst were to keep in strictest confidence the data thus received and the data was to be destroyed as soon as it had served the accountants' purpose in the preparation of the annual census report. The accountants had been preparing these reports for the Association since 1949. The reports set forth the sales in units and dollars of various categories and types of athletic equipment.

By a subpoena dated February 24, 1956, signed by the Federal Trade Commission Hearing Examiner and addressed to W. W. Tuttle, a partner and resident manager of Ernst & Ernst, at Boston, Mr. Tuttle was required to appear and testify at a hearing before the Examiner to be held in the United States Courthouse in New York City on April 30, 1956, in the "Matter of A. G. Spalding & Bros. Inc."; and to bring with him the following books, papers and documents:

"1. Such books, records and documents as will disclose all correspondence, telegrams, memoranda, statistics, work papers, bulletins, census and reports prepared, transmitted or received by Ernst and Ernst, its officers, agents, employees, boards, council, committee or member thereof for the past four years, in the possession or control of Ernst and Ernst and relate to census reports prepared for the Athletic Goods Manufacturing Association."

Ernst & Ernst only partially complied with the subpoena *duces tecum*. They produced the "census reports" and also, with the permission of the two corporations, so much of the data as the accounting firm had received from A. G. Spalding Bros. and Rawlings Manufacturing Company, for the years 1954 and 1955. Information as to individual companies for the years prior to 1954 had been destroyed before the institution of the Commission's proceedings against Spalding. But Ernst & Ernst did not produce any of the data and information they had received from the other individual companies who were members of the Association for the years 1954 and 1955, or their own records.

The Federal Trade Commission on May 17, 1956, filed a petition in the United States District Court, Southern District of New York, for an order compelling Mr. Tuttle, resident manager of Ernst & Ernst, to fully comply with the requirements of the subpoena *duces tecum*. The jurisdiction of the District Court to hear and consider the petition is derived from

the third unnumbered paragraph of Section 9 of the Federal Trade Commission Act.[2]

Mr. Tuttle filed an answer to the petition and set up three special defenses:

(1) That under Section 9 of the Federal Trade Commission Act the petitioner, the Commission, does not have the power or authority to obtain by subpoena *duces tecum* documentary evidence of any corporation not being investigated or proceeded against, and that therefore the Commission cannot obtain by subpoena from Ernst & Ernst the reports of individual companies other than Spalding and Rawlings; and that the Court does not have the power to order the Respondent Tuttle, or Ernst & Ernst, to

**2.** Section 9 of the Federal Trade Commission Act provides, T. 15 U.S.C.A. § 49, Chap. 311, § 9, 38 Stat. 722:

"§ 49. Documentary evidence; depositions; witnesses

"For the purposes of sections 41–46 and 47–58 of this title the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the commission may sign subpoenas, and members and examiners of the commission may administer oaths and affirmations, examine witnesses, and receive evidence.

"Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And in case of disobedience to a subpoena the commission may invoke the aid of any court or the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.

"Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any corporation or other person, issue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof.

"Upon the application of the Attorney General of the United States, at the request of the commission, the district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person or corporation to comply with the provisions of sections 41–46 and 47–58 of this title or any order of the commission made in pursuance thereof.

"The commission may order testimony to be taken by deposition in any proceeding or investigation pending under sections 41–46 and 47–58 of this title at any stage of such proceeding or investigation. Such depositions may be taken before any person designated by the commission and having power to administer oaths. Such testimony shall be reduced to writing by the person taking the deposition, or under his direction, and shall then be subscribed by the deponent. Any person may be compelled to appear and depose and to produce documentary evidence in the same manner as witnesses may be compelled to appear and testify and produce documentary evidence before the commission as hereinbefore provided.

"Witnesses summoned before the commission shall be paid the same fees and mileage that are paid witnesses in the courts of the United States, and witnesses whose depositions are taken and the persons taking the same shall severally be entitled to the same fees as are paid for like services in the courts of the United States.

"No person shall be excused from attending and testifying or from producing documentary evidence before the commission or in obedience to the subpoena of the commission on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to criminate him or subject him to a penalty or forfeiture. But no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify, or produce evidence, documentary or otherwise, before the commission in obedience to a subpoena issued by it: *Provided*, That no natural person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying. Sept. 26, 1914, c. 311, § 9, 38 Stat. 722."

produce the reports of those other companies.

(2) That Section 9 of the Federal Trade Commission Act if it grants the Commission that power of subpoena violates the Fifth Amendment of the United States Constitution, in that the Commission would be taking part of the business of Ernst & Ernst which it conducts as accountants for this Association and other similar groups, and would deprive Ernst & Ernst of a valuable business, without due process of law.

(3) That in view of the hardship it would impose on Ernst & Ernst if they are required to disclose this confidential information, which they assert is merely hearsay and not competent proof in the Spalding matter, enforcement of the subpoena would violate Section 6(c) of the Federal Administrative Procedure Act, 5 U.S.C.A. § 1005(c), as being unreasonable and oppressive and therefore not "in accordance with law."

The District Judge concluded "that the plain words of Section 9 of the Federal Trade Commission Act do not authorize the issuance of this subpoena." He held that the Commission's power of subpoena under Section 9 was limited to the production of any documentary evidence of any corporation being investigated or proceeded against; that the respondent (Mr. Tuttle as Resident Manager of Ernst & Ernst) is neither being investigated nor proceeded against (nor are the so-called other companies); and that "the subpoena is unauthorized and the application (of the Commission to enforce the subpoena) is denied."

The Commission on this appeal contends (1) that the District Court erred in its construction of the subpoena clause in Section 9 of the Federal Trade Commission Act; (2) and that although the Court did not reach other objections to the subpoena raised by respondent, they are without merit and the subpoena should be enforced.

The respondent-appellee in addition to the contentions asserted in the special defenses set forth in their answer, argue that the Commission has no authority to issue a subpoena *duces tecum* in a proceeding brought by it to enforce the Clayton Act.

Before taking up the main issue presented by this appeal, the construction of Section 9 of the Federal Trade Commission Act, the collateral issues will be considered.

■ Section 9 of the Federal Trade Commission Act is not unconstitutional if its provisions permit the service of the subpoena *duces tecum* in this case. The petitioner is seeking the production by the respondent of 150 reports which were furnished by members of the Athletic Goods Manufacturers Association to Ernst & Ernst to enable it to prepare the annual "census report" for the industry. The 150 reports are not "privileged" or confidential communications. The data sought is relevant to the issues that will arise under the allegations of the complaint which the Commission has filed against Spalding, as a reading of the complaint will show. The "reports" have a bearing on the competitive relationship of the members of the Association and will serve to establish the extent of the market control that may have resulted from Spalding's purchase of the Rawlings stock. For those reasons also the subpoena does not violate the Federal Administrative Procedure Act, § 6(c) in relation to subpoenas.[3] The subpoena is not unreasonable in its scope, nor in any way oppressive, and it is in accordance with law, if the Commission had the power under Section 9 of the Federal Trade Commission Act, to issue the subpoena.

The use of the subpoena would not be unconstitutional even if it indirectly had an adverse effect on a certain part of Ernst & Ernst's accounting business. The public interest to be served is superior. If the Association and similar groups wish to have the "census reports" prepared annually, accountants from convenient offices of Ernst & Ernst (they

3. T. 5 U.S.C.A. § 1005, Chap. 324, 60 Stat. 237, June 11, 1946.

have 60 offices in the United States) could examine the necessary data at the offices of the Association's members. There appears to be no reasonable basis for respondent's contention that either the petitioner or the United States, of which it is an Agency, is taking respondent's property without due process of law.

Defendant's contention that the Federal Trade Commission does not have the power to issue subpoenas in a proceeding under the Clayton Act, overlooks the fact that both the Clayton Act and Federal Trade Commission Act were under consideration by the Congress at the same time;[4] that the Congressional debates show that investigations under the Clayton Act were to be conducted by the Commission;[5] that the Commission is mentioned in Sections 2, 7 and 11 of the Clayton Act; and that under Section 11 of the Clayton Act, § 21 of T. 15 U.S.C.A., the Federal Trade Commission is authorized to enforce compliance with Section 7 of the Clayton Act, § 18 of T. 15 U.S.C.A. Likewise the Commission was granted the power under Section 1 of the Robinson-Patman Act, § 13 of T. 15 U.S.C.A. to investigate and institute proceedings to enforce the provisions of the Robinson-Patman Act. The Supreme Court has held that the Commission possesses "broad power of investigation and subpoena" which it may use prior to the filing of a complaint for price discrimination, a violation of the Robinson-Patman Act. Automatic Canteen Co. v. F. T. C., 346 U.S. 61, 79, 73 S.Ct. 1017, 1027, 97 L.Ed. 1454. The subpoena power necessary for that purpose is found in Section 9 of the Federal Trade Commission Act. The Robinson-Patman Act contained no subpoena powers.

An adequate subpoena power is essential to any investigation of offenses under the Clayton Act[6] and to the enforcement of Section 7 of that Act. The Congress evidently concluded that it was unnecessary to incorporate the full subpoena power in both Acts and was content to set it forth in Section 9 of the Federal Trade Commission Act.[7] The Congress followed a similar course in later anti-monopoly and unfair trade-practices Acts,[8] relating

4. The Federal Trade Commission Act was enacted by the 63rd Congress, 2nd Session on September 26, 1914, 15 U.S.C.A. § 45 et seq., and the Clayton Act was enacted October 15, 1914, 15 U.S.C.A. § 12 et seq.

5. 51 Cong.Rec. 12918; 14475; 13214; 14090; 14222; 16162; 16319; 16332.

6. Chap. 323, 38 Stat. 730, Oct. 15, 1914. The Federal Trade Commission Act supplements the Clayton and Sherman Acts, 15 U.S.C.A. § 1 et seq.; and Section 5 of the Federal Trade Commission Act "minimally * * * registers violations of the Clayton and Sherman Acts." Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 609, 73 S. Ct. 872, 880, 97 L.Ed. 1277. The Federal Trade Commission has the power to suppress as unfair competition, practices of a combination that run counter to the public policy declared in the Sherman and Clayton Acts. Fashion Originators Guild v. Federal Trade Comm., 312 U.S. 457, 463 (footnote 4), 61 S.Ct. 703, 85 L.Ed. 949.

7. See opinion of Thomsen, C. J. (Md.) in Federal Trade Commission v. Menzies, D.C., 145 F.Supp. 164; 168 in support of this power, and opinion of Judge Dimock in Federal Trade Commission v. Rubin, D.C.S.D.N.Y., 145 F.Supp. 171, contra, presently on appeal to this Court, 245 F.2d 60.

On appeal to the Fourth Circuit Court of Appeals, that Court, in an opinion by Parker, C. J., Menzies v. Federal Trade Comm., 242 F.2d 81, affirmed on March 7th Judge Thomsen's decision in the Menzies case, and held that in a proceeding against three corporations, which were charged with the violation of Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act, the Federal Trade Commission could exercise its right to subpoena records under Section 9 of the Federal Trade Commission Act.

A recent (Feb. 15, 1957) opinion of Judge Hoffman, F. T. C. v. Bowman, D.C.Ill., 149 F.Supp. 624, 627, holds that the "subpoena power conferred upon the Commission is available to it in the discharge of its duties under the Clayton Act," citing F. T. C. v. Reed Candy Co., another Northern District Illinois case, decided June 12, 1956.

8. The Acts under which the Federal Trade Commission exercises responsibilities are

to certain specific industries or markets, and it did not in those Acts set forth the subpoena powers required for the investigations to be conducted by the Commission.

The main issue on this appeal is the scope of the subpoena power given the Federal Trade Commission in Section 9 of the Federal Trade Commission Act. The argument of respondent on that point is that the subpoena power is limited to documents and records of the corporation being investigated or proceeded against, which in this case would be the Spalding corporation and possibly the Rawlings corporation. Respondents stress the use of the word "such" in the first sentence of Section 9, which states:

"Sec. 9. That for the purposes of this Act the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation."

The word " 'such' is a rather slippery word" as Judge Dobie remarked in United States v. Legg, 4 Cir., 157 F.2d 990, 992. Some of its many meanings, depending upon its context, are discussed in 83 C.J.S. p. 771. As a rule it is used to refer to an antecedent. The respondent argues that its antecedent in the first sentence of Section 9 is "documentary evidence of any corporation being investigated or proceeded against." That contention might appear to be reasonable if we read only the language of the first sentence of Section 9 disregarding the other provisions of Section 9; the purpose and policy of the Federal Trade Commission Act; its legislative history;

listed in Section 1.2 entitled "Laws Administered" under Subpart A of Part 1, setting forth general procedures and

the Congressional intent; and the effect of respondent-appellee's construction of Section 9, if adopted, upon the Commission's functioning under the Act. "There is sufficient ambiguity here to permit consideration of relevant legislative history." Mastro Plastics Corp. v. National Labor Relations Board, 350 U.S. 270, 287, 76 S.Ct. 349, 360, 100 L.Ed. 309. In that case the Court ruled on "a narrowly literal construction of the words" of Section 8(d) of the National Labor Relations Act, 29 U.S.C.A. § 158(d), as the court observed in National Labor Relations Board v. Lion Oil Co., 352 U.S. 282, 288, 77 S.Ct. 330, 334, 1 L.Ed.2d 331.

The Federal Trade Commission Act was the work of the 63rd Congress, 2nd Session. In April 1914, a bill known as H. R. 15613 was introduced in the House of Representatives and was referred to its Committee on Interstate and Foreign Commerce. It was passed by the House on June 5, 1914. On June 13, 1914, the Senate Committee on Interstate Commerce, to which H. R. 15613 had been referred, reported as a substitute Senate Bill No. 4160 which had been reported favorably to the Senate on June 6th. The Senate and House bills went to conference and a conference bill emerged. The House conference report is No. 1142 and is dated September 4, 1914. The conference bill was passsed by the Congress September 26, 1914, and as passed contained Section 9 in its present form.

H. R. 15613, in the Second paragraph of Section 10, provided:

"For the purpose of prosecuting any investigation or proceeding authorized by this section the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against."

rules of practice of the Federal Trade Commission, 15 U.S.C.A. following section 45.

And in Section 16 provided:

"Sec. 16. That for the purposes of this Act, and in aid of its powers of investigation herein granted, the commission shall have and exercise the same powers conferred upon the Interstate Commerce Commission in the Acts to regulate commerce to subpoena and compel the attendance and testimony of witnesses and the production of documentary evidence and to administer oaths."

Senate Bill 4160 provided, in the second paragraph of Section 3(g):

"For the purpose of prosecuting any investigation or proceeding authorized by this section the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documents or writings of any corporation being investigated or proceeded against."

And in Section 8 provided:

"Sec. 8. The commission shall have and exercise the powers possessed by the Interstate Commerce Commission to subpoena and compel the attendance and testimony of witnesses and the production of evidence, and to administer oaths."

From the above it appears that the second paragraph of Section 10 of H. R. 15613 and the second paragraph of Section 3(g) of Senate Bill 4160 are almost identical. The words "any documentary evidence" appear in the House Bill and the words "and documents or writings" in the Senate Bill.

The substance of Section 16 of the House Bill is the same as Section 8 of the Senate Bill.

When it came to drafting Section 9 of the conference bill (which became the Federal Trade Commission Act), the language of Section 10 of the House Bill was followed in the first half of the first sentence of Section 9 of the Act, and then recourse was had to the Interstate Commerce Act, Section 12, for the second half of the first sentence of Section 9 of the

Act. The conference committee decided to have the Federal Trade Commission Act contain its own subpoena powers, without reference to the Interstate Commerce Commission Act.

The last part of Section 12 of the Interstate Commerce Act, T. 49 U.S.C.A. § 12, states:

"* * * the commission shall have power to require, by subpoena, the attendance and testimony of witnesses and the production of all books, papers, tariffs, contracts, agreements, and documents relating to any matter under investigation."

Compare this with the last part of the first sentence of Section 9 of the Federal Trade Commission Act which provides:

"* * * the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation."

What the draftsman did in incorporating the subpoena provisions of the Interstate Commerce Act into the conference bill, which became the Federal Trade Commission Act, was to substitute the words "Such documentary evidence," for the words "books, papers, tariffs, contracts, agreements, and documents" of the Interstate Commerce Act. But by moving the subpoena provision from its place in Section 16 of the House Bill, No. 15613, to a position in the conference bill where it would immediately follow Section 10 of the House bill, relating to the Commission's right of access to "any documentary evidence of any corporation being investigated or proceeded against," the draftsman introduced the word "such" which has given rise to the main issue on this appeal. The word "such" was placed in a position where it might be argued, as the respondents do here, that the word "such documentary evidence" in the second half of the first sentence of Section 9 of the Act were subject to the limitation that it must be the "documentary evidence of any corporation being investigated or proceeded

against," mentioned in the first half of that sentence.

The draftsman of the conference bill that became the Federal Trade Commission Act took the first sentence of paragraph 2 of Section 12 of the Interstate Commerce Act (without change) and made it the first sentence of the second paragraph of Section 9 of the Federal Trade Commission Act, so that it reads: "Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing." In the Interstate Commerce Act the words "such documentary evidence" refer to "all books, papers, tariffs, contracts, agreements, and documents." Section 12 of the Interstate Commerce Act is also the source of other provisions of Section 9 of the Federal Trade Commission Act, including those relating to recourse to the District Court to enforce the Commission's subpoenas and the taking of testimony by deposition.

Respondent's narrow construction of the first sentence of the first paragraph of Section 9 is in direct conflict with the broad provisions of the fifth paragraph of that section, relating to the taking of testimony by deposition "in any proceeding or investigation pending under this Act." The word "such" is not used in relation to "documentary evidence" in any part of the fifth paragraph. That paragraph contains no limitation on the origin of the "documentary evidence"; and any person "may be compelled to appear and depose and to produce documentary evidence in the same manner as witnesses may be compelled to appear and testify and produce documentary evidence before the commission as hereinbefore provided." The compulsion would be supplied by an order of the District Court in the manner provided in the third paragraph of Section 9. If respondent's construction of the first sentence of Section 9 were correct, the result would be incongruous. A witness subpoenaed to produce documents at a hearing before an Examiner, could not be compelled to produce documents of persons other than the corporation under investigation; but if the testimony of the witness was being taken by deposition he could be compelled to produce the documents.

A provision appearing in the last paragraph of Section 9 of the Federal Trade Commission Act grants to natural persons testifying or producing documentary evidence under subpoena, immunity from prosecution or penalty or forfeiture "for or on account of any transaction, matter, or thing concerning which he may testify, or produce evidence, documentary or otherwise, before the commission in obedience to a subpoena issued by it: *Provided,* That no natural person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying."

 A natural person does not have the protection of the Fifth Amendment of the Constitution in respect to books and papers of a corporation which are in his physical possession, even though they contain matters which might tend to incriminate him. [Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771.] The inference is warranted that the "immunity" provision was made part of Section 9 of the Federal Trade Commission Act, in order that the Commission might compel the production of books and papers belonging to natural persons, or to partnerships being examined through a resident partner (Ernst & Ernst through Mr. Tuttle). That conclusion negatives the idea that the subpoena power of the Commission under Section 9 is limited to documents of a corporation under investigation or being proceeded against.

The limited construction of the word "such," contended for by the respondents, would also result in this anomalous situation—that oral testimony could be elicited by the Commission in examining a witness under subpoena, concerning transactions reported in the books and records of the individual or partnership, but the books and records themselves could not be subpoenaed.

If the power of the Commission to subpoena records is limited to records of

corporations being investigated or proceeded against, and if there is no right to subpoena records of individuals or partnerships under Section 9 of the Act, how could the Commission fulfill its duties under Section 5 of the Act, relating to "unfair methods of competition," which specifically includes violations by a "person, partnership or corporation"? § 45 of T. 15 U.S.C.A. This is further evidence of the destructive effect which the construction the respondents herein place upon the word "such," in the first sentence of Section 9 of the Act, would have upon the proper functioning of the Commission.

Further, if the second half of the first sentence of Section 9 limits the subpoena power of the Commission to documents of the corporation under investigation, to which the Commission is given access and the right to make copies under the first half of the sentence, of what use is the grant of the power of subpoena? The Commission could get all the information it wanted from the corporation under the access and copying power. Respondent's construction of the language granting the subpoena power, would in effect render the subpoena power useless—an absurd result never contemplated by the Congress.

■ As the Supreme Court has repeated several times: "'In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" United States v. Boisdore's Heirs, 8 How. 113, 121, 12 L.Ed. 1009, quoted in Mastro Plastics Corp. v. National Labor Relations Board, 350 U.S. 270, 285, 76 S.Ct. 349, 359, and in National Labor Relations Board v. Lion Oil Co., 352 U.S. 282, 77 S.Ct. 330. To the same effect, see United States v. American Trucking Ass'ns, 310 U.S. 534, 542 and 543, 60 S.Ct. 1059, 84 L.Ed. 1345.

Finally, the respondent's narrow construction of the words "such documentary evidence" as used in the first paragraph of Section 9 of the Act would impair the proper functioning of the Commission. The accounting firm, having in its possession data supplied by third parties "relating to any matter under investigation" by the Commission, would be immune from subpoena for the production of the data, and the third parties themselves would likewise be immune. The Commission would be limited to the documentary evidence of the corporation being investigated, even though the investigation concerned the effect of the monopolistic acquisitions or unfair competitive practices of that corporation on others in the industry. Proof of the extent of the monopolistic trend of acquisitions by a corporation and their effect on the industry might well be found in the records of other corporations in the same industry. Without those records the Commission might fail to establish important allegations of its complaint.

■ It was clearly the purpose of the Congress that the Commission should have adequate subpoena power to perform its duties. In reporting H.R. 15613 the House Committee stated (House Report 533):

"In order that the Commission may have ample power of subpoena and production of books and papers the language of section 16 of the bill has been expressly made broad enough to permit a full exercise of that power in connection with any kind of investigation which may be undertaken."

The report of the Senate Committee (Senate Report No. 597) on the House bill as redrafted by the Senate, stated:

"* * * it is indispensable that it (the Commission) should have extensive power of inquiry, with the right to subpoena witnesses and to require the production of books and papers. The powers which, according to this bill are granted to the commission, are practically the same as those now granted to the Inter-

state Commerce Commission or the Bureau of Corporations * * * ".[9]

In a report on the Conference Bill (Report No. 1142) made to the House on September 14, 1914, it was stated that in the Conference Bill "the administrative process for conducting investigations, summoning witnesses and punishing violations is substantially as in the House bill," i. e., the same as the power possessed by the Interstate Commerce Commission.

■ A correct interpretation of the long first sentence of Section 9 of the Federal Trade Commission Act should recognize the fact that it grants two separate powers to the Commission, and that the language granting those distinct powers is separated by a semi-colon. The first grants the right of access to and the right to copy any documentary evidence of the corporation being investigated or proceeded against. The second grants a subpoena power for the production of documentary evidence relating to any matter under investigation.

■ In the second half of the first sentence of Section 9 the words "the production of all such documentary evidence relating to any matter under investigation" should be construed to mean "the production of all documentary evidence relating to any matter under investigation," thus eliminating the word "such." That will comply with the policy and purposes of the Act itself.

■■ The policy of the Act must be considered, and its purposes, in construing the powers given the Commission to function under the Act. Even if the plain meaning of the wording of a statute is apparent, the Supreme Court will not apply that meaning if that would lead to "absurd or futile results." The Court "has looked beyond the words to the purpose of the act." And frequently, when the plain meaning produces "merely an unreasonable [result which is] 'plainly at variance with the policy of the legislation as a whole'" the Supreme Court "has followed that purpose, rather than the literal words." United States v. American Trucking Ass'ns, 310 U.S. 534, on page 543, 60 S.Ct. 1059, on page 1064, and cases cited.

In the case of Federal Trade Commission v. Bowman, D.C., 149 F.Supp. 624, 627, decided by Judge Hoffman on February 15, 1957, the Federal Trade Commission had filed in the District Court, Northern District of Illinois, a petition for the enforcement of a subpoena *duces tecum* directing Wilson & Co. to produce certain records, in this same proceeding of Federal Trade Commission v. A. G. Spalding & Bros. Inc. In resisting the effort of the Federal Trade Commission to compel the production of the Wilson Company's records under subpoena in the "proceeding" against Spalding, the Wilson Company made the same contention advanced by the respondent in the case at bar, namely that the word "such" as used in the second half of the first sentence of Section 9 of the Federal Trade Commission Act, relates only to the records of a corporation being investigated or proceeded against. Judge Hoffman's opinion states:

"It is unnecessary to decide whether the defendant's interpretation attaches more significance to the word 'such' than it can reasonably be made to bear. The argument fails upon another ground. Conceding that the Wilson company is not being 'proceeded against' within the meaning of the quoted portion of Section 9, the question remains whether the company is 'being investigated' as that term is used in the Act. Section 6 of the Federal Trade Commission Act, 38 Stat. 721, 15 U.S.C.A. § 46 * * * "

The Act to establish the Department of Commerce and Labor, Ch. 552, 32 Stat. 827 enacted February 14, 1903, contained provisions for a Bureau of Corporations, § 6; and that Bureau was given the same power to compel the attendance and testimony of witnesses and the production of documentary evidence as was conferred upon the Interstate Commerce Commission.

Judge Hoffman held that the Wilson company could be termed a corporation "being investigated."

Without expressing any opinion on the applicability of Section 6 of the Federal Trade Commission Act (relating to investigations by the Commission) to the records of a corporation whose officer is to be examined as a witness in a "proceeding" against another corporation, we conclude that the Bowman case is not a precedent contra to the construction we have given to the first sentence of Section 9 of the Federal Trade Commission Act.

■ Section 6(f) of the Federal Trade Commission Act gives the Commission the power

> "(f) To make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use."

The respondents contend that the information sought by the Commission under the subpoena in the case at bar would include the sales records of the individual companies and that those records may be properly classsified as "trade secrets." Assuming, *arguendo*, that sales records of the individual companies are trade secrets under Section 6(f), all that that section forbids is the *publication* of "trade secrets and names of customers," in public reports that the Commission may make "from time to time" which it "shall deem expedient in the public interest." That does not mean that "trade secrets and names of customers" may not be subpoenaed by the Commission in any proceeding or investigation under the Act. They may be subpoenaed in litigation in the Federal Courts, if the infor-

mation is relevant and necessary to the presentation of a case. 4 Moore, Federal Practice, § 26.22 p. 1087.

■ The Clayton Act and the Federal Trade Commission Act have been in effect since 1914. The Commission has consistently followed the subpoena practice that is here challenged. Only within the last two years has the legality of that practice been questioned. An "administrative practice does not avail to overcome a statute so plain in its commands as to leave nothing for construction"; but an "administrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons if the scope of the command is indefinite and doubtful." Judge Cardozo in Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796. And "Courts are slow to disturb the settled administrative construction of a statute long and consistently adhered to" especially where "the declared will of the legislative body could not be carried out without the construction adopted." (Mr. Justice Stone in Alaska Steamship Co. v. United States, 290 U.S. 256, 262, 54 S.Ct. 159, 161, 78 L.Ed. 302.

For the reasons stated in this opinion, the order of the District Court is reversed and the mandate will direct that the District Court enter an order compelling the respondent to comply with the subpoena *duces tecum* at a time and place to be fixed by the Court.

MEDINA, Circuit Judge (dissenting).

Section 9 of the Federal Trade Commission Act, 38 Stat. 722, 15 U.S.C.A. § 49, provides:

> "That for the purposes of this Act the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attend-

ance and testimony of witnesses and the production of all *such documentary evidence* relating to any matter under investigation." (Emphasis added.)

I think it clear beyond cavil, and my brothers seem to agree, that the phrase "such documentary evidence" is susceptible of no interpretation other than "documentary evidence of any corporation being investigated or proceeded against." Were the words capable of some other interpretation, it should not be adopted, for "the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 213, 76 L.Ed. 484; Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370, 45 S.Ct. 274, 69 L.Ed. 660. See also Crane v. Commissioner, 331 U.S. 1, 6, 67 S.Ct. 1047, 91 L.Ed. 1301.

Nevertheless, my brothers have concluded that the word "such" crept into the statute inadvertently and that we have power to "eliminate" it in applying the statute. This they do, referring to the process as one of "construction." But the Supreme Court has indicated the proper bounds of "construction," declaring it permissible "To let general words draw nourishment from their purpose," but not "To draw on some unexpressed spirit outside the bounds of the normal meaning of words." Addison v. Holly Hill Fruit Products Co., 332 U.S. 607, 617, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488. The Court condemned legislation in the guise of "construction," saying in 332 U.S. at page 618, 64 S.Ct. at page 1221:

"While the judicial function in construing legislation is not a mechanical process from which judgment is excluded, it is nevertheless very different from the legislative function. Construction is not legislation and must avoid 'that retrospective expansion of meaning which properly deserves the stigma of judicial legislation.' Kirschbaum Co. v. Walling, 316 U.S. 517, 522, 62 S.Ct. 1116, 1119, 86 L.Ed. 1638. To blur the distinctive functions of the legislative and judicial processes is not conducive to responsible legislation."

And the Court said in Railroad Commission of Wisconsin v. Chicago B. & Q. R. R. Co., 257 U.S. 563, at pages 588–589, 42 S.Ct. 232, at pages 237–238, 66 L.Ed. 371:

"Great stress is put on the legislative history * * *. Committee reports and explanatory statements of members in charge made in presenting a bill for passage have been held to be a legitimate aid to the interpretation of a statute where its language is doubtful or obscure. Duplex Printing Press Co. v. Deering, 254 U.S. 443, 475, 41 S.Ct. 172, 65 L.Ed. 349. But when taking the act as a whole, the effect of the language used is clear to the court, extraneous aid like this cannot control the interpretation. Pennsylvania R. R. Co. v. International Coal Mining Co., 230 U.S. 184, 198, 33 S.Ct. 893, 57 L.Ed. 1446; Caminetti v. United States, 242 U.S. 470, 490, 37 S.Ct. 192, 61 L.Ed. 442. Such aids are only admissible to solve doubt and not to create it."

As the Court said in Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, at page 201, 66 S.Ct. 494, at page 501, 90 L.Ed. 614, "This case presents an instance of 'the most explicit language' which leaves no room for questioning congress' intent."

My brothers seek to justify departure from this rule by finding that limiting the powers of the Commission to those granted by the statute "would lead to absurd or futile results." With this conclusion I cannot agree.

First, it is said that it would be "absurd or futile" to provide that witnesses may be subpoenaed to produce only certain documents, whereas the provision of 15 U.S.C.A. § 49, that "Any person

may be compelled to appear and depose and to produce documentary evidence * * *," "contains no limitation on the origin of the 'documentary evidence.'" This "incongruity," it is said, provides sufficient excuse and authority for a court to grant to the Commission a power not contained in the statute defining its powers. But the premise is faulty. My brothers' construction fails to take into account the qualifying words immediately following that part of the statute quoted above. The entire sentence reads as follows: "Any person may be compelled to appear and depose and to produce documentary evidence *in the same manner as witnesses may be compelled to appear and testify and produce documentary evidence before the commission as hereinbefore provided.*" (Emphasis added.) Thus, there is no "incongruity," "absurdity" or "futility": the power to require production of documents in connection with depositions is precisely the same as the power to require production of documents by subpoena; it is unlimited only if the subpoena power is unlimited.

It is further said that it would be "absurd" for the Congress to authorize the Commission to subpoena only those documents to which it had access, for this "would in effect render the subpoena power useless." But my brothers' construction must fall before the same argument that engenders it, for if the point has merit would not then the access power be useless, and would this not be "an absurd result never contemplated by the Congress"? The language of the statute and the legislative history make it clear, however, that the Congress considered the powers of access and of subpoena separate and distinct. For example, different penalties are provided for violations of these powers. 15 U.S.C.A. § 50. I see no force in the argument that the subpoena power must be broader than the access power.

"Finally," my brothers assert, "the respondent's narrow construction of the words 'such documentary evidence' as used in the first paragraph of Section

9 of the Act would impair the proper functioning of the Commission." This conclusion stems, I think, from an erroneous reading of the Act as it stands. The Commission is undoubtedly empowered to subpoena documents of corporations "being investigated." My brothers give this term a narrow meaning; they consider that a corporation is "being investigated" only if the Commission is contemplating a proceeding against it. Yet Section 6(a) of the Federal Trade Commission Act, 38 Stat. 721, 15 U.S. C.A. § 46, authorizes the Commission "to investigate from time to time the organization, business, conduct, practices, and management of any corporation engaged in commerce." Is not a corporation "being investigated" if it is the subject of a proper exercise of the Commission's powers under this section? It has been held that it is, F. T. C. v. Bowman, D.C.N.D.Ill., 149 F.Supp. 624, decided February 15, 1957, and appellee agrees that this decision is correct. Nothing to the contrary may be found in F. T. C. v. Hammond, Snyder & Co., 276 U.S. 586, 45 S.Ct. 461, 69 L.Ed. 800, affirming D.C. 284 F. 886, and F. T. C. v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696; those cases merely condemned "fishing expeditions into private papers on the possibility that they may disclose evidence of crime," 264 U.S. at page 306, 44 S.Ct. at page 337, "when it [the Commission] has no reason to believe that any violation of law has been committed," 284 F. at page 888. Thus, there is no need for a judicial redrafting of the statute, since the Commission is given ample power to obtain the documents of corporations. And this power is available in the case at bar. To the extent the Commission finds it necessary to investigate other corporations in connection with its proceeding against Spalding, it is empowered to subpoena their papers relating to the matter under investigation. The subpoena need not be addressed to the corporation being investigated; any person, including natural persons and partnerships, may be compelled to produce "such

documentary evidence." Although there is a requirement that the documents belong to a "corporation being investigated or proceeded against," there is none that they be in the possession of such a corporation. Hence I would reverse the decision below and direct the enforcement of the subpoena insofar as it relates to documentary evidence of the member corporations pertinent to the matter at hand.

My brothers seem to be convinced that the word "such" was accidentally inserted by the Conference Committee and was unwittingly adopted by both Houses and by the President. While such a series of mistakes is of course not beyond the realm of possibility, it is not the only reasonable explanation for the late introduction of the word. As my brothers point out, in the earlier versions of the Act the access power and the subpoena power were found in different sections in different parts of the Act. It is not unlikely that when the Conference Committee incorporated both powers into a single section they noticed for the first time that the power to subpoena documents was broader than the access power and, since there was no apparent reason why that should be so, they deliberately correlated the two.

Although I agree there do exist indications that the Congress omitted to grant a power it had intended to grant, I am nevertheless unable to adopt the position taken by my brothers, for I do not understand that the intention of the legislators is law even though that intention has not found expression in legislation, or that the courts are free to grant to administrative agencies powers in excess of those specifically enacted by the Congress. "Legislation introducing a new system is at best empirical, and not infrequently administration reveals gaps or inadequacies of one sort or another that may call for amendatory legislation. But it is no warrant for extending a statute that experience may disclose that it should have been made more comprehensive." Addison v. Holly Hill Fruit Products Co., supra, 332 U.S. at page 617, 64 S.Ct. at page 1221. Under our Constitution, that is the business of the Congress and the President, not of federal judges. See Schwegmann Bros. v. Calvert Distilling Corp., 341 U.S. 384, 396, 397, 71 S.Ct. 745, 751, 95 L.Ed. 1035 (concurring opinion):

"The Rules of the House and Senate, with the sanction of the Constitution, require three readings of an Act in each House before final enactment. That is intended, I take it, to make sure that each House knows what it is passing and passes what it wants, and that what is enacted was formally reduced to writing. It is the business of Congress to sum up its own debates in its legislation. Moreover, it is only the words of the bill that have presidential approval, where that approval is given. It is not to be supposed that, in signing a bill, the President endorses the whole Congressional Record. For us to undertake to reconstruct an enactment from legislative history is merely to involve the Court in political controversies which are quite proper in the enactment of a bill but should have no place in its interpretation.

"Moreover, there are practical reasons why we should accept whenever possible the meaning which an enactment reveals on its face. Laws are intended for all of our people to live by; and the people go to law offices to learn what their rights under those laws are. * * * Aside from a few offices in the larger cities, the materials of legislative history are not available to the lawyer who can afford neither the cost of acquisition, the cost of housing, or the cost of repeatedly examining the whole Congressional history. Moreover, if he could, he would not know any way of anticipating what would impress enough members of the Court to be controlling. To accept legislative debates to modify statutory

**620**

provisions is to make the law inaccessible to a large part of the country.

"By and large, I think our function was well stated by Mr. Justice Holmes: 'We do not inquire what the legislature meant; we ask only what the statute means.' Holmes, Collected Legal Papers, 207."

My brothers find support in the statement of the Supreme Court that "administrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons if the scope of the command is indefinite and doubtful." Norwegian Nitrogen Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796. I fully subscribe to this principle, but it has no application here, for the words of the statute "construed" are neither "indefinite" nor "doubtful." More in point are the accompanying statement that "administrative practice does not avail to overcome a statute so plain in its commands as to leave nothing for construction," and the language of the Court in United States v. Morton Salt Co., 338 U.S. 632, at page 647, 70 S.Ct. 357, 366, 94 L.Ed. 401:

"The fact that powers long have been unexercised may well call for close scrutiny as to whether they exist; but if granted, they are not lost by being allowed to lie dormant, *any more than nonexistent powers can be prescripted by an unchallenged exercise.*" (Emphasis added.)

Hence I dissent from the broad ruling by my brothers but would reverse and remand the case with directions to require appellant to comply with the subpoena *duces tecum* only to the extent of producing documentary evidence of the various corporations which I believe fall into the classification of "any corporation being investigated," as I have defined that phrase in what I have already written, and in accord with the ruling of Judge Hoffman in the Bowman case. This interpretation of Section 9 of the Federal Trade Commission Act, 15 U.S. C.A. § 49, harmonizes the various clauses of the Section and accords to the words, "such documentary evidence," their natural and plain meaning in their context.