**FEDERAL TRADE COMMISSION,**
Petitioner,

v.

**Harry W. GREEN, Vice President, Standard Brands Incorporated, Respondent.**

United States District Court
S. D. New York.

Feb. 4, 1966.

James McI. Henderson, Charles C. Moore, Jr., Harold D. Rhynedance, Jr., Federal Trade Commission, Washington, D. C., Albert G. Seidman, Federal Trade Commission, New York City, for petitioner.

Dunnington, Bartholow & Miller, New York City, by Charles L. Stewart, New York City, Covington & Burling, Washington, D. C., by Harry L. Shniderman, Herbert Dym, Washington, D. C., for respondent.

BONSAL, District Judge.

The Federal Trade Commission petitions this court under Section 9 of the Federal Trade Commission Act (15 U.S.C. § 49) for an order directing respondent Harry W. Green, a Vice President of Standard Brands Incorporated (Standard Brands), a Delaware corporation having its principal place of business in New York City, to testify and produce certain documentary evidence described in a subpoena duces tecum issued by petitioner on September 1, 1965. The subpoena directed respondent to appear before the Commission to testify and present certain documents pertaining to Standard Brands.

The subpoena was issued in connection with an investigation which the Commission is conducting of the yeast industry under its statutory authority (15 U.S.C. §§ 43, 45, 46 and 49) pursuant to resolution dated April 14, 1965. This resolution, to which the subpoena makes reference, states that the investigation is being conducted for the purpose of determining whether the producers or distributors of compressed yeast, active dry yeast and related products have been or are now engaged in practices in violation of Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(a) (1)) or Section 2 of the Clayton Act, as amended

by the Robinson-Patman Act (15 U.S.C. § 13).

On September 13, 1965, respondent and Standard Brands filed with the Commission a "Motion to Quash and Limit Subpoena Duces Tecum in Part" in which they sought to quash Specifications Nos. 4(a), 4(e) and 6 (insofar as Specification No. 6 concerns production costs).[1] On October 5, 1965, the Commission issued an order denying the motion, accompanied by a written opinion.[2] On November 18, 1965, respondent appeared before the Commission and gave testimony and produced documents required under the subpoena but refused to furnish the documents called for by the above listed specifications. Following respondent's refusal, the Commission instituted this proceeding to compel compliance with the subpoena.

Respondent argues that this court lacks jurisdiction over this proceeding since Section 9 of the Federal Trade Commission Act (15 U.S.C. § 49) provides that "Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on" may issue an order requiring compliance with a Federal Trade Commission subpoena. Respondent contends that since Green is required to give testimony and produce documents in Washington, the District of Columbia is the only place where the inquiry is carried on and that this court lacks jurisdiction. Respondent's contention is without merit. It appears that the statutory inquiry embraces the yeast industry, which is nationwide. Even if consideration is limited to that portion of the inquiry relating to Standard Brands, New York is a place where the inquiry is being carried on for Standard Brands has its principal place of business in New York City and presumably the documents sought by the Commission are located in New York. It is thus clear that this enforcement proceeding is properly brought before this court.

Respondent urges that the Commission's subpoena must be invalidated because the Commission has not stated the purpose of the investigation with sufficient particularity to enable respondent to determine the relevance of the data sought by the Commission. Respondent is of the view that the statutes cited by the Commission in its authorizing resolution, particularly Section 5 of the Federal Trade Commission Act which prohibits unfair methods of competition and deceptive or unfair acts or practices in commerce, are so broad as to "not even

---

1. These specifications are as follows:

"4. The original or true copies of books, ledgers, records or other documents or, in lieu thereof, verified statements and/or tabulations, showing the following information as to compressed yeast packed or wrapped in lots or units of one lb. or more for each of the years 1958 through 1964 and the first 8 months of 1965 for each plant, identified by location, at which compressed yeast was produced and/or from which it was sold and distributed by Standard Brands Incorporated.

(a) Total production costs per lb., such production costs to include a breakdown of the unit costs in the following categories: (1) total material cost, (ii) total direct labor cost, (iii) total manufacturing expenses including depreciation, (iv) total general and administrative expenses allocable to production costs, including a description and the amount of each item of cost carried under this heading.

* * * * *

(e) Total costs of production.

* * * * *

6. The original or true copies of books, ledgers, records or other documents or, in lieu thereof, verified statements and/or tabulations, showing the same information as to active dry yeast called for as to compressed yeast under specifications 4 and 5, above."

2. On October 25, 1965, respondent and Standard Brands filed an action against the Commission and its individual members in the United States District Court, District of Columbia, seeking a judgment declaring the subpoena void as to the disputed specifications and seeking an injunction against its enforcement as to those specifications. Subsequently, on November 10, 1965, the parties entered into a stipulation dismissing the action without prejudice.

offer a clue as to the subject matter of the investigation."

■ It is true, as respondent points out, that the courts have on occasion refused to enforce a subpoena issued by an administrative agency where the statement of purpose was insufficient to enable the court to determine the relevance of the information sought thereunder. See Montship Lines, Ltd. v. Federal Maritime Board, 111 U.S.App. D.C. 160, 295 F.2d 147 (1961); Hellenic Lines, Ltd. v. Federal Maritime Board, 111 U.S.App.D.C. 151, 295 F.2d 138 (1961). In those cases, however, there was either no statement of purpose or merely a statement that the investigation was being carried on in pursuance of the Board's statutory duties. Other cases have upheld statements of purpose which, as in the instant case, have recited the statutory provisions which the agency thinks may have been violated. Westside Ford v. United States, 206 F.2d 627 (9th Cir. 1953); Pacific Westbound Conference v. United States, 332 F.2d 49 (9th Cir. 1964); Far East Conference v. Federal Maritime Commission, 337 F.2d 146 (D.C.Cir.1964), cert. denied, 379 U.S. 991, 85 S.Ct. 704, 13 L.Ed.2d 611 (1965). The court does not think that the statutory provisions cited by the Commission in this investigation are so broad as to make those cases inapposite. Indeed, it is evident from the nature of the data here sought that the Commission is investigating whether Standard Brands or other manufacturers are selling below cost or otherwise engaging in price discrimination not justified by costs. Respondent's position thus cannot be sustained.

■ Respondent further contends that as an individual he has no authority to produce the documents requested and that ·Standard Brands must be joined as a party. However, a corporate officer may be required to produce records of his company. Federal Trade Commis-

sion v. Cooper, CCH 1962 Trade Cases, ¶70,353 (S.D.N.Y.); McMann v. Securities and Exchange Commission, 87 F.2d 377, 109 A.L.R. 1445 (2d Cir. 1937), cert. denied, 301 U.S. 684, 57 S.Ct. 785, 81 L.Ed. 1342 (1936).[3]

The principal contention of respondent is that the information sought by the Commission is not relevant to the Commission's investigation. Respondent urges that the breakdown of cost data by plants and by categories (material, labor, manufacturing, and general and administrative) is not relevant because Standard Brands charges a uniform price regardless of the plant involved and has already supplied its overall cost data to the Commission.

■ The power of the Federal Trade Commission to subpoena documents in the course of an investigation is a broad one. It is sufficient that the inquiry is within the Commission's authority, the demand is not too indefinite and the information sought is reasonably relevant. United States v. Morton Salt Co., 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 216, 66 S.Ct. 494, 90 L.Ed. 614 (1946); Civil Aeronautics Board v. Hermann, 353 U.S. 322, 77 S.Ct. 804, 1 L.Ed.2d 852 (1957); Westside Ford v. United States, 206 F.2d 627 (9th Cir. 1953); Adams v. Federal Trade Commission, 296 F.2d 861 (8th Cir. 1961), cert. denied, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (1962). The standards of relevance are far less rigid than in an adversary proceeding. Westside Ford v. United States, supra.

■ The court cannot agree with respondent's contention that the plant by plant breakdown of cost data is irrelevant to the Commission's investigation. The court is not prepared to say that varying costs by plant in different sections of the country, if such exist, may not be relevant to the Commission's inquiry even though Standard Brands

3. It appears that this contention is urged primarily to preserve the right of Standard Brands to request an order protecting the confidentiality of any information which this court should order produced.

charges uniform prices. Nor can the court say that it is irrelevant to the Commission's inquiry if the figures show that costs in any particular plant exceed the uniform price which respondent charges. It is further the court's conclusion that the breakdown of cost data by categories is relevant to the Commission's investigation. Such data will show how Standard Brands calculated its overall cost figures and whether such figures were properly arrived at.

Finally, respondent contends that this cost data constitutes a valuable trade secret to Standard Brands, the disclosure of which would benefit its competitors. Respondent maintains that where trade secrets are involved, the Commission must make a strong showing that the information is relevant and necessary, and that no such showing has been made here. This point is not well taken. The fact that information sought by the Commission in an investigation constitutes a trade secret does not limit the Commission's power to obtain it. Federal Trade Commission v. Tuttle, 244 F.2d 605 (2d Cir. 1957), cert. denied, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957); Federal Trade Commission v. Cooper, CCH 1962 Trade Cases, ¶70,353 (S.D.N.Y.); Federal Trade Commission v. Waltham Watch Co., 169 F.Supp. 614 (S.D.N.Y.1959); cf. Federal Communications Commission v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). The only issue is whether the data which the Commission seeks is reasonably relevant to its investigation, and the court holds that it is. Accordingly, this data must be produced by the respondent.

Respondent asks that if the cost data is made available, the court issue a protective order forbidding disclosure by the Commission of the data ordered produced. Assuming arguendo that such protection is appropriate, a protective order at this time would be premature. Section 1.133(a) of the Commission's Rules (16 C.F.R. § 1.133(a)) prohibits disclosure of any information obtained by the Commission unless authorized by the Commission or necessary in connection with an adjudicative proceeding; in either case it would be open at that time for the respondent or Standard Brands to make appropriate objections to the disclosure of the information. It is noted that Section 10 of the Federal Trade Commission Act (15 U.S.C. § 50) provides criminal penalties for disclosure of information by Commission personnel if not authorized by the Commission. Respondent's request for a protective order at this time is accordingly denied.

Respondent is ordered to produce to the Federal Trade Commission the information required by Specifications Nos. 4(a), 4(e) and 6 (insofar as Specification No. 6 concerns production costs) of the Commission's subpoena dated September 1, 1965. Respondent's request for a protective order is denied.

Settle order on notice.