390 F.2d 323
 FEDERAL TRADE COMMISSION, Appellant,
v.
Paul C. GUIGNON, Divisional Vice President, Anheuser-Busch, Incorporated, and John H. Pahlman, Controller, Anheuser-Busch, Incorporated, Appellees.
 No. 18716.
 United States Court of Appeals Eighth Circuit.
 February 9, 1968.
 Rehearing Denied March 6, 1968.
 
 Gerald J. Thain, Atty., Federal Trade Commission, Washington, D. C., for appellant; James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, and Charles C. Moore, Jr., Atty., Federal Trade Commission, were on the brief with Gerald J. Thain, Washington, D. C.
 Harold F. Baker, Washington, D. C., for appellees; Terrence C. Sheehy, Washington, D. C., and Dwight D. Ingamells and Thomas J. Carroll, St. Louis, Mo., were with Harold F. Baker, Washington, D. C., on the brief.
 Carl Eardley, Acting Asst. Atty. Gen., and Morton Hollander and Richard S. Salzman, Attys., Dept. of Justice, Washington, D. C., on brief and reply brief for United States as amicus curiae.
 James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, and Charles C. Moore, Jr., and Gerald J. Thain, Attys. for the Federal Trade Commission, on brief for the Federal Trade Commission in response to brief for the United States as amicus curiae.
 Before VOGEL, Chief Judge, BLACKMUN and HEANEY, Circuit Judges.
 VOGEL, Chief Judge.
 
 
 1
 The Federal Trade Commission here appeals from the dismissal of its action seeking a District Court order to enforce two discovery subpoenaes issued pursuant to §§ 6 (b) and 9 of the Federal Trade Commission Act as amended, 15 U.S.C.A. § 45 et seq. We are principally concerned with whether the Federal Trade Commission, acting under § 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 49, may, without the aid or consent of the Attorney General of the United States, seek enforcement of its own subpoenaes in the Federal District Courts. No factual determinations are necessary. The rather complicated background may, however, be found from a consideration of our earlier opinion in Anheuser-Busch, Inc. v. Federal Trade Commission, 1966, 359 F.2d 487, and Chief Judge Harper's opinion in this case, published at D. C., 261 F.Supp. 215.
 
 
 2
 The District Court held herein that the Commission may not seek enforcement of its own subpoenaes in a Federal District Court without the aid or consent of the Attorney General of the United States. Since that determination, another District Court in Federal Trade Commission v. Continental Can Co., Inc., S.D.N.Y., 1967, 267 F.Supp. 713, reached the opposite conclusion. We affirm the District Court herein.
 
 
 3
 We preface discussion of the issue involved here with the basic statutory provisions that in all litigation to which the United States or an agency thereof is a party, the Attorney General is given plenary power and supervision. 28 U.S.C.A. provides:
 
 
 4
 "§ 516. Conduct of litigation reserved to Department of Justice
 
 
 5
 "Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."
 
 
 6
 § 519 of the same title further provides:
 
 
 7
 
 "Supervision of litigation
 
 
 
 8
 "Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties."
 
 
 9
 It will be noted that Congress provided an exception — "except as otherwise authorized by law" — so that when an agency is given specific authorization to proceed without the advice, assistance or supervision of the Attorney General it may do so. Such an exception was found by the Supreme Court as to the Emergency Price Control Act when it said in Case v. Bowles, 1946, 327 U.S. 92 at page 96, 66 S.Ct. 438 at page 441, 90 L.Ed. 552:
 
 
 10
 "* * * that Act specifically empowers the Administrator to commence actions such as this one and authorizes attorneys employed by him to represent him in such actions. § 201(a)."
 
 
 11
 See, also, Confiscation Cases, 1869, 7 Wall. (74 U.S.) 454, 457, 19 L.Ed. 196; Sutherland v. International Ins. Co. of New York, 2 Cir., 1930, 43 F.2d 969, 970, cert. denied, 282 U.S. 890, 51 S.Ct. 103, 75 L.Ed. 785.
 
 
 12
 The Commission contends that the exception, "except as otherwise authorized by law", applies in this instance because § 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 49, set out in pertinent part in the margin,[1] grants it authority to enforce its subpoenaes in the District Courts without the aid or consent of the Attorney General. More specifically, the Commission relies on the second sentence of paragraph 2 of § 9 which states:
 
 
 13
 "* * * And in case of disobedience to a subpoena the commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence."
 
 
 14
 It is immediately obvious that this language is more ambiguous than the language of provisions which clearly come within the "except as otherwise authorized by law" exception to the Attorney General's broad authority to control and supervise government litigation under Title 28. Such provisions may expressly authorize an agency to appear by its own counsel with respect to a particular type of proceedings; as for example, under 15 U.S.C.A. § 53(a) the Federal Trade Commission is given authority to seek temporary injunctions against false advertising "* * * by any of its attorneys designated by it for such purpose * * *." The authorization may also be broader, such as a grant of general authority for the agency's lawyers to represent it in court, as in 49 U.S.C.A. § 16, par. (11), which authorizes the Interstate Commerce Commission to "employ such attorneys as it finds necessary * * * to appear for or represent the commission in any case in court * *." Another example is 29 U.S.C.A. § 154(a) of the National Labor Relations Act, which states that, "Attorneys appointed under this section may at the discretion of the Board, appear for and represent the Board in any case in court. * * *" See, also, Case v. Bowles, supra, at 327 U.S. 96-97, 66 S.Ct. 438.
 
 
 15
 Despite the obvious disparity in the provision relied upon by the Commission for its authority to bring an action to enforce subpoenaes by its own attorneys rather than proceeding through the Attorney General's office, the Commission presents us with an extensive list of citations to cases in which the Commission has successfully brought actions to enforce its subpoenaes without proceeding through the office of the Attorney General.[2] The citations are impressive and include a case from this court, Adams v. Federal Trade Commission, 8 Cir., 1961, 296 F.2d 861. Nevertheless, in none of the cases was the authority of the Commission to so enforce its subpoenaes questioned. The mere exercise of authority, unchallenged, cannot of itself create a power which only Congress can give to the Commission. As Mr. Justice Jackson, speaking for the Supreme Court, said in United States v. Morton Salt Co., 1950, 338 U.S. 632, at page 647, 70 S.Ct. 357, at page 366, 94 L.Ed. 401:
 
 
 16
 "The fact that powers long have been unexercised well may call for close scrutiny as to whether they exist; but if granted, they are not lost by being allowed to lie dormant, any more than nonexistent powers can be prescripted by an unchallenged exercise."
 
 
 17
 Additionally, the Commission's interpretation appears to be in conflict with the purposes of the statute as revealed by the discussions of the original bill in the House. It is noted that in responding to a question during House debates on the jurisdictional aspects of the section, Congressman Covington, the bill's sponsor and a member of the committee which drafted the measure, said:
 
 
 18
 "* * * section 9, to which the gentlemen refers, [sic] was dealing entirely with methods and processes — it provides that the jurisdiction of the district courts of the United States shall be invoked only upon the application of the Attorney General of the United States, and only at the request of the Commission." 51 Cong.Rec. 14,927 (63rd Cong., 2d Sess., 1914).
 
 
 19
 The Commission urges here that the 1966 holding of the Supreme Court in Federal Trade Commission v. Dean Foods, 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802, supports its practice of proceeding in District Court by its own attorneys and without the aid or consent of the Attorney General. The Commission finds such support in the Supreme Court's language at page 607 of 384 U.S., at page 1744 of 86 S.Ct.:
 
 
 20
 "* * * There is no explicit statutory authority for the Commission to appear in judicial review proceedings, but no one has contended it cannot appear in the courts of appeals to defend its orders. Nor has it ever been asserted that the Commission could not bring contempt actions in the appropriate court of appeals when the court's enforcement orders were violated, though it has no statutory authority in this respect. Such ancillary powers have always been treated as essential to the effective discharge of the Commission's responsibilities."
 
 
 21
 Even taken out of context in the Dean Foods case, the language just quoted offers little support for the Commission's position because the language consistently refers to Commission proceedings before the Courts of Appeals, where no statutory authority is involved. Here we are concerned with proceedings in a District Court, and if there is any authority for the Commission to proceed independently of the Attorney General, it is statutory authority necessarily found within § 9 of the Federal Trade Commission Act. Placed in context, any support afforded by the above language of Dean Foods evaporates. The issue in that case was whether a Court of Appeals had authority to issue injunctions under the All Writs Act, 28 U.S.C.A. § 1651(a) (1964 ed.) before the Federal Trade Commission had issued a final order otherwise subject to appellate review. Thus, the issue in that case was far removed from that with which we are here concerned. Several distinctions between that case and the instant case are also relevant. In Dean Foods the application was made to the Court of Appeals rather than to a District Court and the application was for a temporary restraining order and a preliminary injunction rather than an action by the Commission to obtain enforcement of administrative subpoenaes. Jurisdiction of a Court of Appeals to grant preliminary injunctions to the Commission staying a proposed merger is significantly different in derivation than the jurisdiction of a District Court to enforce Commission subpoenaes. As noted by the Supreme Court in Dean Foods, the Court of Appeals' power to grant the preliminary relief derived "* * * not from the Clayton Act, but from the All Writs Act * * *", 384 U.S. at 608, 86 S.Ct. at 1744 and was "in aid of * * * [its] jurisdiction". 28 U.S.C.A. § 1651(a). Here the power of the District Court to enforce Commission subpoenaes is derived from the Clayton Act and must be enforced as required by the Clayton Act. The majority's discussion of the various proposals to amend the Clayton Act at page 609, 86 S.Ct. at page 1745 of Dean Foods is further evidence of the irrelevance of that case to the power of the Commission to proceed in the District Court for relief without the consent of the Attorney General, as the court there noted:
 
 
 22
 "* * * The proposals concerned only the power of the Commission itself to issue preliminary relief or to proceed in the district courts for that purpose. * * * the legislation as proposed would have had no effect whatever on the power that Congress granted the courts by the All Writs Act."
 
 
 23
 Here the Commission obviously does not and could not contend that a court's power under the All Writs Act entitles the Commission to enforce its subpoenas without proceeding through the office of the Attorney General.
 
 
 24
 We note further that Dean Foods was concerned with Commission administration of § 7 of the Clayton Act (15 U.S. C.A. § 18, acquisition by one corporation of stock of another) whereas here we are concerned with the Commission administration of § 2 of the Clayton Act (15 U.S.C.A. § 13, discrimination in price). The policy considerations cited by the court in favor of the Commission action in § 7 administration are generally not found in Commission § 2 administration.
 
 
 25
 Finally, we note that Dean Foods was solely concerned with the authority of the Court of Appeals to grant the writ sought, and did not directly or indirectly concern itself with the possible conflict between the Commission and the Attorney General over which agency was the proper one to seek the exercise of that authority. This fact is not without significance. We are concerned here with the jurisdiction of the District Court to grant the relief as sought by the Commission. No one disputes the fact that the District Courts may be called upon to enforce Commission subpoenaes. What is disputed is whether the Commission, through its own attorneys, rather than through the offices of the Attorney General, may make application to the District Courts for enforcement of Commission subpoenaes. Once the narrow confines of this issue are clearly realized, the comments in cases such as Oklahoma Press Publishing Co. v. Walling, 1946, 327 U.S. 186, at 200, n. 24, 66 S.Ct. 494, 90 L.Ed. 614, and Federal Trade Commission v. Tuttle, 2 Cir., 1957, 244 F.2d 605, cert. denied, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436, can be placed in proper perspective. Viewed in that perspective, it is clear that those cases do no touch upon the limited issue here but were concerned with the broader questions of whether, under the particular factual circumstances, the Commission had the power to issue subpoenaes and the jurisdiction of the District Courts to enforce the subpoenaes issued. Implicit in the holding of those cases is the assumption that the application for enforcement was proper. Here we are concerned with whether the application for enforcement, rather than the jurisdiction of the District Court or the subpoena itself, is proper.
 
 
 26
 Some of the sweeping statements in the dissenting opinion in Dean Foods may suggest that Dean Foods is controlling here, but in answer we are mindful of Judge Friendly's statement in United States v. Gorman, 2 Cir., 1965, 355 F.2d 151, at 155:
 
 
 27
 "* * * We find no basis for so concluding, despite statements in concurring and dissenting opinions, * * rarely a safe guide to the holding of the majority."
 
 
 28
 The Commission places great reliance on the 40-year-old case of Federal Trade Commission v. Millers' Nat. Federation, 1927, 57 App.D.C. 360, 23 F.2d 968. In Millers', the appellees successfully sought a temporary injunction to set aside an order directing that subpoenaes be issued and served upon the appellees or their officers. The Commission appealed the granting of this injunction. The Commission was proceeding in an investigation of the appellees pursuant to a Senate Resolution calling for an investigation of price fixing and discrimination. The Commission resisted the granting of the injunction, claiming equity lacked jurisdiction because the appellees had an adequate remedy at law. While it is true that the court's ratio decidendi in that case suggests that the Commission has authority to enforce subpoenaes without resorting to the Attorney General, 23 F.2d at 970-971, the court was considering a "special appeal" to determine only "the question of the jurisdiction of the court below." 23 F. 2d at 972. That court then held that an injunction could be sought to restrain the Commission if the Commission exceeded its authority because there was no adequate remedy available to the petitioners at law. This court resolved the precise issue involved in the "special appeal" in Millers' by reaching a contrary result. We held in Anheuser-Busch, Inc. v. Federal Trade Commission, 8 Cir., 1966, 359 F.2d 487, that a District Court lacked jurisdiction to grant injunctive relief against enforcement of Commission subpoenaes because the plaintiffs in that case had an adequate remedy at law.
 
 
 29
 We note that four years after the determination of the first Millers' case in 23 F.2d 968, the same court, in Federal Trade Commission v. Millers' Nat. Federation, 1931, 60 App.D.C. 66, 47 F.2d 428, reversed its position and held that the District Court lacked jurisdiction to grant injunctive relief against Commission enforcement proceedings. See, 94 L.Ed. pp. 420, 421 wherein the annotation says, as to the two Millers' cases:
 
 
 30
 "* * * It is interesting that, though the opinion in both of these cases is by the same justice, the conclusions reached appear to be exactly opposite."
 
 
 31
 It would be strange, indeed, for this court to now adopt as the basis for the present decision the ratio decidendi of a case on a different issue which reached a result opposite to the result reached by this Court on that same issue.
 
 
 32
 Millers' must also be considered in connection with the decision by the Supreme Court of the United States in Federal Trade Commission v. Claire Furnace Co., 1927, 274 U.S. 160, 47 S.Ct. 553, 71 L. Ed. 978, handed down only eight months prior to Millers'. Therein, the Supreme Court held that the Federal Trade Commission could not enforce its orders without the aid or consent of the Attorney General and the court added this relevant language at pages 173-174 of 274 U.S. [47 S.Ct. 553]:
 
 
 33
 "There was nothing which the Commission could have done to secure enforcement of the challenged orders except to request the Attorney General to institute proceedings for a mandamus or supply him with the necessary facts for an action to enforce the incurred forfeitures. If, exercising his discretion, he had instituted either proceeding the defendant therein would have been fully heard and could have adequately and effectively presented every ground of objection sought to be presented now. Consequently, the trial court should have refused to entertain the bill in equity for an injunction." (Emphasis supplied.) We agree with the reasoning of Chief Judge Harper in this case, where he said, at page 218 of 261 F.Supp.:
 
 
 34
 "The facts in the Claire case are indistinguishable from the present facts, except that here the Commission has gone one step further than they did in the Claire case.
 
 
 35
 "In Claire the Commission sought information similar to that which the Commission seeks here. * * *
 
 
 36
 "Here the Commission by order sought information as to costs and profits, exactly as it did in the Claire case. After Anheuser-Busch refused to comply with this order the Commission, instead of seeking enforcement of the order through the Attorney General as the Claire case had expressly said to do, and said there was no other way to do it, it issued subpoenaes to obtain the information. Was this proper? This Court thinks not."
 
 
 37
 In Claire the Supreme Court also agreed that it was the intent of Congress that the Federal Trade Commission, under § 9, must seek the assistance of the Attorney General before invoking the assistance of the courts, and added at page 174 of 274 U.S., at page 556 of 47 S.Ct.:
 
 
 38
 "* * * Until the Attorney General acts, the defendants cannot suffer, and, when he does act, they can promptly answer and have full opportunity to contest the legality of any prejudicial proceeding against them."
 
 
 39
 Additionally, we point out that the Federal Trade Commission Act and certainly § 9 thereof must be read in its entirety. See, N. L. R. B. v. Lion Oil Co., 1957, 352 U.S. 282, 289, 77 S.Ct. 330, 1 L. Ed.2d 331; United States v. Morton Salt Co., supra, 338 U.S. at 650, 70 S.Ct. 357; Federal Trade Commission v. Tuttle, supra, 2 Cir., 1957, 244 F.2d 605, 614. Thus, the second sentence of the second paragraph, quoted above, and the third paragraph must be read with the fourth paragraph, which provides in part that:
 
 
 40
 "* * * any order of the commission made in pursuance * * * [of] sections 41-46 and 47-58 of this title * * *" (emphasis supplied)
 
 
 41
 may be enforced by the District Court upon condition that the application for enforcement be made by the Attorney General. The third paragraph also grants the District Court power to enforce Commission subpoenaes by requiring an appearance before the Commission or requiring the production of documentary evidence "if so ordered" by the Commission. Thus, while paragraph three gives the District Court power to enforce subpoenaes, that paragraph further equates subpoenaes with orders and since paragraph four requires that the application for enforcement of "any order" be by the Attorney General upon the request of the Commission, the meaning of the paragraphs becomes clear. They are cumulative in the grant of jurisdiction to the District Court, but they are concurrent in the limitation to the Attorney General alone of the power to bring into effect the District Court jurisdiction.
 
 
 42
 It should be noted that following the argument of this case an order was issued inviting the Attorney General to appear as amicus curiae and file a brief expressing his views on the issue to be determined. His response urges that § 9 does not authorize the Commission to represent itself in subpoena enforcement proceedings. In support of his position, the Attorney General calls our attention to the fact that the subpoena enforcement provision of § 9 is virtually identical to the subpoena enforcement provisions for other agencies, such as: Civil Aeronautics Board and the Administrator of the Federal Aviation Agency (49 U.S.C. § 1484(c) and (d), § 1487(a) and (b)); Federal Communications Commission (47 U.S.C. §§ 401, 409(f)); Federal Maritime Commission (formerly Board) and the Secretary of Commerce (46 U.S.C. §§ 826, 828, 830, 1124(b)); National Mediation Board (45 U.S.C. § 157(h)); Secretary of Health, Education and Welfare (in Social Security investigations) (42 U.S.C. § 405(e)); Small Business Administration (15 U.S.C. § 687b); Subversive Activities Control Board (50 U.S.C. § 792 (c)), and that all of these agencies "are either represented by the Department of Justice or are required to obtain the Department's authorization before seeking enforcement of an administrative subpoena by the district court."
 
 
 43
 It is argued that there are policy reasons for encouraging a result contrary to that reached here. For example, the conclusion here may result in delay in obtaining enforcement or perhaps occasions might arise where the Justice Department would refuse to bring enforcement actions because that department felt the information unnecessary and either circumstance might unduly frustrate the fact-finding function of the Commission. Not only do we believe that such fundamental policy considerations concerning possible disagreement between federal agencies are best resolved by legislative action, we believe further that these policies were considered by Congress when the Federal Trade Commission Act was passed. This belief seems to have been concurred in by Mr. Chief Justice Taft in Claire, where he stated at page 174 of 274 U.S., at page 556 of 47 S.Ct.:
 
 
 44
 "* * * It was intended by Congress in providing this method of enforcing the orders of the Trade Commission to impose upon the Attorney General the duty of examining the scope and propriety of the orders, and of sifting out of the mass of inquiries issued what in his judgment was pertinent and lawful before asking the court to adjudge forfeitures for failure to give the great amount of information required or to issue a mandamus against those whom the orders affected and who refused to comply. The wide scope and variety of the questions, answers to which are asked in these orders, show the wisdom of requiring the chief law officer of the government to exercise a sound discretion in designating inquiries to enforce which he shall feel justified in invoking the action of the court. In a case like this, the exercise of this discretion will greatly relieve the court and may save it much unnecessary labor and discussion."
 
 
 45
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 "§ 49Documentary evidence; depositions; witnesses
 "For the purposes of sections 41-46 and 47-58 of this title the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the commission may sign subpoenas, and members and examiners of the commission may administer oaths and affirmations, examine witnesses, and receive evidence.
 "Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And in case of disobedience to a subpoena the commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.
 "Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any corporation or other person, issue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof.
 "Upon the application of the Attorney General of the United States, at the request of the commission, the district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person or corporation to comply with the provisions of sections 41-46 and 47-58 of this title or any order of the commission made in pursuance thereof."
 
 
 [2]
 E. g., Federal Trade Commission v. Harrell, 7 Cir., 1963, 313 F.2d 854; Federal Trade Commission v. Tuttle, 2 Cir., 1957, 244 F.2d 605; Federal Trade Commission v. Green, S.D.N.Y., 1966, 252 F. Supp. 153; Federal Trade Commission v. Cooper, S.D.N.Y., 1962, CCH Trade Cases 70,353
 
 
 
 46
 HEANEY, Circuit Judge (dissenting).
 
 
 47
 I respectfully dissent.
 
 
 48
 In my view, a reversal of the District Court's decision is required by the language of the Federal Trade Commission Act, the legislative history of the Act, and past practice; and is supported by policy considerations.
 
 
 49
 (1) The language of the Federal Trade Commission Act.
 
 
 50
 It is conceded that Congress has reserved to the Attorney General "except as otherwise authorized by law, the conduct of litigation in which the United States, an agency or officer thereof is a party, or is interested, and securing evidence therefor * * *" (28 U.S.C. § 516, Supp. II 1967); and subject to the same exception, has required the Attorney General to "supervise all litigation to which the United States, an agency,[1] or officer thereof is a party * * * 28 U.S.C. §§ 516, 519 (Supp. II 1967). Case v. Bowles, 327 U.S. 92, 96-97, 66 S.Ct. 438, 90 L.Ed. 552 (1946); Confiscation Cases, 7 Wall. (74 U.S.) 454, 19 L.Ed. 196 (1869); Sutherland v. International Ins. Co. of New York, 43 F. 2d 969 (2d Cir. 1930) (per L. Hand, J.); Exec. Order No. 6166, § 5, June 10, 1933, 5 U.S.C. (1958 ed.) pp. 139-141.
 
 
 51
 The FTC urges that paragraphs two and three of Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, otherwise authorize the FTC to seek enforcement of its subpoenas in the United States District Court without the aid or the consent of the Attorney General, and give the District Court jurisdiction to grant that relief.
 
 
 52
 This view is supported by Federal Trade Com. v. Dean Foods Co., 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966). The five judge majority specifically discussed two issues presented in the case: (1) Does the FTC have the right to seek a temporary restraining order and a preliminary injunction to maintain the status quo while awaiting a ruling as to the legality of a pending merger; and (2) does the Court of Appeals have jurisdiction to grant the relief sought? The Court held that the All Writs Act empowered the Courts of Appeals to issue such equitable relief and that the authority of the FTC to seek such relief could be implied from the general grant of authority given the FTC by Congress. The clear dichotomy between the two aspects of the problem was also demonstrated in the dissent's summary of the majority. Justice Fortas, speaking for a minority of four, stated:
 
 
 53
 "In so deciding, the Court determines that the Commission — an administrative agency with defined and circumscribed powers — is authorized to seek such relief in the courts of appeals; and that the courts of appeals, under the All Writs Act, 28 U.S.C. § 1651 (a) (1964 ed.), have power to entertain the Commission's petition and to grant the injunctive relief.
 
 
 54
 "This decision cannot be supported. * * * The [Federal Trade Commission] Act plainly and explicitly vests the governmental power to restrain and enjoin violations of the Act in the district courts, not in the court of appeals. * * *"
 
 
 55
 Id. at 612-613, 86 S.Ct. at 1747.
 
 
 56
 That the majority opinion clearly authorizes the legal staff of the Commission to institute injunctive proceedings, where the facts are comparable to those in Dean Foods, is made clear by the fact that the argument of the minority went directly to that issue:
 
 
 57
 "[The Federal Trade Commission Act] plainly and explicitly empowers the United States attorneys `under the direction of the Attorney General' — and not the Federal Trade Commission — to institute such proceedings. 15 U.S.C. § 25 (1964 ed.).
 
 
 58
 * * * * * *
 
 
 59
 "The clear design of the statute is that the authority to decide on behalf of the Government, to seek the powerful remedy of preliminary injunction, and the power to do so, are vested in the Attorney General. That is his business — his type of function. It is his deliberately withheld from the Commission. That is not its business. The Commission is supposed to be an expert agency, acting deliberately, bringing to bear upon the complex economic problems of a merger, that judgment and experience which can emerge only from careful factual inquiry, the taking of evidence and the formulation of a report. * * *"
 
 
 60
 Id. at 612-613, 618, 86 S.Ct. at 1747, 1750 (Emphasis added.)
 
 
 61
 The majority in Dean Foods clearly went further in sustaining the powers of the FTC and the jurisdiction of the Court of Appeals than is necessary to sustain the powers of the FTC and the jurisdiction of the District Court here, as here the FTC is not seeking the application of an extraordinary remedy with serious consequence to the defendant but seeks only to obtain information necessary to reach a decision.
 
 
 62
 Nor can Dean Foods be distinguished on the grounds that the FTC proceeded there pursuant to the All Writs Act. Its right to proceed under that Act in the Court of Appeals would appear to be as limited by 28 U.S.C. §§ 516, 519 (Supp. II 1967) as is its right to proceed under paragraphs two and three of Section 9 of the FTC Act.
 
 
 63
 Indeed, the language used in the minority opinion supports a belief that the justices joining in that opinion would view this case in a more favorable light, and would permit the legal staff of the FTC to proceed as a necessary adjunct of its fact-finding power.
 
 
 64
 "When the Commission was established in 1914, it was not intended to duplicate the functions of existing agencies, but rather to bring to bear on the problems of antitrust and unfair competition the `specialized knowledge and expert judgment, continuity of experience and political independence, flexible procedures and efficient fact-finding methods — [hopefully] characteristic of the administrative process.' Elman, Rule-making Procedures in the FTC's Enforcement of Merger Law, 78 Harv L Rev. 385, 387 (1964)."
 
 
 65
 Id. at 635-636, 86 S.Ct. at 1759 (Emphasis added.)
 
 
 66
 The requirements laid down in Dean Foods (a right by the FTC to seek relief and jurisdiction in the court to grant it) are met here by Section 9. Paragraph two authorizes the FTC to invoke the aid of a District Court of the United States to enforce its subpoenas in aid of its investigative functions, and paragraph three grants the District Court jurisdiction of such actions.
 
 
 67
 This conclusion gains support from Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), where the Supreme Court, in discussing the subpoena power conferred by Section 9 of the Federal Trade Commission Act, indicated that the power of the FTC to invoke the aid of any court in the United States in requiring the attendance and testimony of witnesses was based on paragraphs two and three. Id. at 200, n. 24, 66 S.Ct. 494. No reference was made to the fourth paragraph.
 
 
 68
 It is also supported by Federal Trade Commission v. Tuttle, 244 F.2d 605 (2d Cir.), cert. denied 354 U.S. 925, 77 S. Ct. 1379, 1 L.Ed.2d 1436 (1957), where the Court stated:
 
 
 69
 "The jurisdiction of District Court to hear and consider the petition [for court order requiring compliance with a Commission subpoena] is derived from the third unnumbered paragraph of Section 9 of the Federal Trade Commission Act."
 
 
 70
 Id. at 607-608.
 
 
 71
 Similarly, other lower federal courts, when discussing the statutory authority for the enforcement of subpoenas under Section 9 of the Act, have consistently referred to only paragraphs two and three. The most recent reference to these two paragraphs was by this Court in Adams v. F. T. C., 296 F.2d 861, 863 n. 3 (8th Cir. 1961). Numerous federal courts have only cited paragraph three as the basis for the District Court's jurisdiction for enforcement of administrative subpoenas and have made no reference to paragraph four. Flotill Products, Inc. v. F. T. C., 278 F.2d 850, 851 (9th Cir. 1960); Clarke v. Federal Trade Commission, 128 F.2d 542 n. 2 (9th Cir. 1942); F. T. C. v. Green, 252 F.Supp. 153, 155 (S.D.N.Y.1966); Federal Trade Commission v. Menzies, 145 F.Supp. 164, 167 (D.Md.1956) aff'd, 242 F.2d 81 (4th Cir. 1957).
 
 
 72
 The view that paragraphs two and three of Section 9 provide the statutory basis for subpoena enforcement also has scholarly support:
 
 
 73
 "The main reliance for enforcement of federal administrative orders requiring disclosure of information has been a procedure whereby the agency applies to a court for an order, violation of which is punishable as a contempt of court. In the 1893 case of ICC v. Brimson [154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047] the Supreme Court remarked that such a body as the Interstate Commerce Commission `could not, under our system of government, and consistently with due process of law, be invested with authority to compel obedience to its orders by a judgment of fine or imprisonment.' But the Court went on to hold that a judicial proceeding to enforce a subpoena issued by the Commission satisfies the `case' or `controversy' requirement of the Constitution, and that judicial enforcement does not violate the principle of separation of powers. Accordingly, since 1893 Congress has consistently refused to empower any agency to commit for contempt, customarily providing instead that agencies may apply to the appropriate district court for an order enforceable by contempt proceedings." DAVIS, ADMINISTRATIVE LAW TREATISE, Vol. I, § 3.11 at 213 (1958). It is also significant to note that the same authority cites only the second and third paragraphs when referring to the subpoena enforcement procedure. Id. at 213 n. 7.
 
 
 74
 It is argued by the majority that even though paragraphs two and three would, standing alone, constitute authority for the FTC to bring the action and the District Court to hear it, paragraph four nevertheless limits that right and requires that the Attorney General conduct the litigation. I do not agree.
 
 
 75
 Paragraph four, by its terms, gives the District Court jurisdiction to issue writs of mandamus compelling compliance with FTC orders in aid of its investigative powers. These FTC orders are of two types: (1) those requiring a corporation to file reports and to answer specific questions,[2] and (2) those granting the FTC right of access to inspect corporate records.[3]
 
 
 76
 Both the third and fourth paragraphs are provisions conferring jurisdiction in the District Court — the third confers jurisdiction specifically to enforce FTC subpoenas, and the fourth confers jurisdiction to require the "filing of reports" and compel the right of "access and inspection" through writs of mandamus. Since these two provisions appear consecutively in the same section and since only the grant of jurisdiction in the fourth paragraph is conditioned upon "the application of the Attorney General," the clear implication is that the Attorney General need not apply for the enforcement of subpoenas. Cf., Fleming v. Lowell Sun Co., 36 F.Supp. 320, 325 (D.Mass.1940), rev'd on other grounds, 120 F.2d 213 (1st Cir. 1941), aff'd by an equally divided Court, 315 U.S. 784, 62 S.Ct. 793, 86 L.Ed. 1191 (1942).
 
 
 77
 I cannot agree that the third paragraph of Section 9 equates subpoenas with orders. The words "if so ordered" refer to the right of the District Court, on request of the FTC, to require documentary evidence to be produced if it was requested in the subpoena, as originally issued. A contrary interpretation of this section would require the Commission to take two steps before a subpoena could be enforced: (even assuming the aid and consent of the Attorney General) (1) issue the subpoena, and (2) issue an order requiring that it be complied with.
 
 
 78
 The majority opinion relies on Federal Trade Commission v. Claire Furnace Co., 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978 (1927). In Claire, the FTC issued notices to twenty-two corporations in steel and allied industries directing them to furnish monthly reports to the FTC on sales, production, expenses, profit and other matters. The corporations sought and obtained a restraining order in United States District Court enjoining the FTC from enforcing its orders on the ground that the reports asked for detailed information concerning mining and manufacturing of intrastate commerce and were thus beyond the FTC authority. This decision was affirmed by the Court of Appeals, Federal Trade Commission v. Claire Furnace Co., 52 App.D.C. 936, 285 F. 936 (1927). Mr. Justice Taft delivered the opinion. The court, in reversing, declined to consider the legality of the reports as ordered, holding that under the provisions of the Federal Trade Commission Act, "there was nothing which the Commission could have done to secure enforcement of the challenged orders except to request the Attorney General to institute proceedings for a mandamus. * * *", 274 U.S. at 173-174, 47 S.Ct. at 556 (Emphasis added.); and thus, if a mandamus action were instituted, the corporations could at that time interpose their objections to the FTC reports.
 
 
 79
 Mr. Justice Taft's broad language in Claire does not support the majority's position. It was concerned with methods available to FTC to enforce its power to require the submission of reports, and not with its power to enforce subpoenas. Federal Trade Commission v. Millers' Nat. Federation, 57 App.D.C. 360, 23 F.2d 968 (1927), gives some support this view. In Millers', an appeal was taken from a temporary injunction setting aside an FTC order directing that subpoenas duces tecum be issued. The jurisdiction of the Court below to grant such relief was challenged on the basis of the Claire case. In holding that Claire, which also originated in the D. C. Circuit, was not controlling, the Court stated:
 
 
 80
 "If the only procedure open against a contumacious witness was by mandamus at the instance of the Attorney General, as in the case of a corporation, and, in the event of the issuance of a writ, the witness, by complying with the order, could purge himself from liability, the rule in the Claire Case would apply; but here the mere refusal to obey the subpoena is made a separate and substantive criminal offense, with the additional possibility of a proceeding against him at the instance of the Commission. In other words, the discretion reposed in the Attorney General in no respect furnishes immunity from prosecution in any court having proper jurisdiction of the case.
 
 
 81
 "Unquestionably, as in the Claire Case, where specific performance of the order could be compelled only by mandamus, and a full opportunity is afforded to answer, and set up by way of defense, objections to the validity of the orders, the legal remedy would be adequate. In the present case, however, a different situation is presented, since upon refusal to comply with the subpoena the witness lays himself liable to the criminal penalties imposed by section 10. The criminal liability attaches, even if the procedure by mandamus were attempted by the Attorney General, or action be instituted by the Commission to compel obedience to its subpoena; and whether the witness be proceeded against for disobedience of the subpoena under section 10, or in mandamus at the instance of the Attorney General, or by the Commission under section 9, criminal liability for disobedience is a condition precedent to the right to test the validity of the act."
 
 Id. 23 F.2d at 970-971[4] (Emphasis added.)
 
 82
 Support for this position is also expressed in recent Law Review Commentaries:
 
 
 83
 "* * * [T]he Commission [FTC] may itself petition a United States District Court for enforcement [of its subpoenas] and need not rely on inducing the Attorney General to act, as in the cases of demands for access and special reports."
 
 
 84
 Hill, Investigative Powers and Techniques of the Federal Trade Commission, 31 D.C.BAR J. 193, 199 (1964).
 
 
 85
 "In case of disobedience to a subpoena, the Commission may itself seek the aid of the courts, but where enforcement of a demand for access or a Section 6(b) report is sought, the Commission is required to request the Attorney General to make application to the courts."
 
 
 86
 Withrow, Investigatory Powers of the Federal Trade Commission — Constitutional and Statutory Limitations, 24 FED. BAR J. 456, 485 (1964).
 
 
 87
 (2) Legislative History.
 
 
 88
 The appellees argue that the legislative history unequivocally supports the view that application for subpoena enforcement must be made by the Attorney General. I do not agree. A careful reading of the colloquy between Representative Sherley and Representative Covington, Floor Manager of the bill,[5] indicates that their discussion was not directed to subpoena enforcement, 51 Cong.Rec. 14927 (63rd Cong., 2d Sess., Sept. 10, 1914), but to whether there was a conflict between Section 45(c), (d) and (e) of the Act giving the Circuit Court of Appeals exclusive jurisdiction to review "actions" [cease and desist orders] of the Commission and Section 9 of the Act giving the District Court jurisdiction to issue writs of mandamus commanding any person to comply with Sections 41-46 and 47-50 of the Act or to comply with an order of FTC. Representative Covington pointed out that it was not intended that FTC would seek to enforce unfair competition orders by writs of mandamus in District Court, and that enforcement of such orders would be sought only through the Circuit Court of Appeals. He further pointed out that it was the intent of the law that writs of mandamus would be used in District Court to command performance with respect to methods and processes in the investigative process which, as I have previously shown, included not only the power of subpoena but the right of access to inspect and the right to require reports.[6]
 
 
 89
 (3) Past Practices of the Commission.
 
 
 90
 16 C.F.R., I § 1.40 (1967), in effect at the time this action arose,[7] provided:
 
 
 91
 "Noncompliance with investigational processes. In cases of failure to comply with Commission investigational processes, appropriate action may be initiated by the Commission or the Attorney General, including actions for enforcement, forfeiture or penalties or criminal action."
 
 
 92
 The rule is clear and unequivocal with respect to FTC's right to initiate enforcement proceedings. While the rule is not binding on the Court, it is entitled to some weight. Cf., Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457 (1930); Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297 (1920).
 
 
 93
 The FTC urges that it has consistently brought actions to enforce subpoenas in its own name without proceeding through the Office of the Attorney General. This argument is met by the appellees' assertion that in the years immediately after the passage of the Act, the Attorney General supervised all proceedings seeking information of the type sought here and thus, no consistent practice can be shown.
 
 
 94
 A review of the subpoena enforcement cases cited by the parties indicates that Federal Trade Commission v. Smith, 34 F.2d 323 (S.D.N.Y.1929), is the first in which this remedy was invoked. In all subpoena enforcement proceedings, the FTC counsel appear as attorneys of record.[8]
 
 
 95
 Three prior cases — United States v. Basic Products Co., 260 F. 472 (W.D.Pa. 1919); Federal Trade Commission v. P. Lorillard Co., 283 F. 999 (S.D.N.Y. 1922); and Federal Trade Commission v. Baltimore Grain Co., 284 F. 886 (D. Md.1922) — involved actions in which the FTC sought right of access by writ of mandamus pursuant to paragraph 4, Section 9 of the Act. In Basic Products and Baltimore Grain, no appearance was noted by the FTC counsel. In Lorillard, the FTC counsel appeared with the Attorney General.
 
 
 96
 One later case, Federal Trade Commission v. National Biscuit Co., 18 F. Supp. 667 (S.D.N.Y.1937), also involved authority to compel compliance with Sections 6(a) and (b) of the Act by writ of mandamus; and as in Basic Products and Baltimore Grain, no appearance was noted by the FTC counsel.
 
 
 97
 Thus, the allegation of both parties appears to be sustained by the cases. Enforcement of subpoenas in large have been handled exclusively by the FTC legal staff, while actions seeking a writ of mandamus to require that information be furnished through "right of access" or "report" have been handled by the Attorney General with or without participation of the FTC legal staff. This practice reflects the provisions of the Act which require that the Attorney General seek writs of mandamus, but permit the FTC legal staff to seek enforcement of a subpoena.
 
 
 98
 In response to the past practice of FTC enforcement proceedings, the Attorney General asserts that many other federal agencies "are either represented by the Department of Justice or are required to obtain the Department's authorization * * *." The majority quotes this assertion. However, the brief contained no authority for this assertion, nor was there any supporting affidavit attached thereto. Regardless, it is the past practice of the FTC proceedings that are most relevant to this case, and that practice supports the authority of the Commission to itself seek enforcement.
 
 
 99
 (4) Policy Considerations.
 
 
 100
 Various policy considerations were urged by the parties and amicus curiae in support of their position.
 
 
 101
 The appellees and the Attorney General urge that it is desirable to center the responsibility for the conduct of FTC litigation in the Office of the Attorney General.
 
 
 102
 While affirmance of the trial court's decision would strengthen the role of the Attorney General in FTC matters, it would not result in a centering of responsibility for conduct of all FTC litigation in that office.[9]
 
 
 103
 The FTC would still have the right of self-representation before the Court of Appeals in review proceedings;[10] the right to bring suit in the United States District Court to enjoin the dissemination of false advertisements, 15 U.S.C. § 53(a) (1964 ed.); the recent and narrowly sustained right to represent the FTC before the United States Court of Appeals in actions to temporarily enjoin the consummation of mergers under attack before the FTC as violative of Section 7 of the Clayton Act, Federal Trade Com. v. Dean Foods Co., supra; and the right to seek threshold relief under Section 7(b) of the Wool Products Labeling Act, 15 U.S.C. § 68e(b) (1964); Section 9(b) of the Fur Products Labeling Act, 15 U.S.C. § 69g(b) (1964); Section 6(a) of the Flammable Fabrics Act, 15 U.S.C. § 1195(a) (1964); and Section 8 of the Textile Fiber Products Identification Act, 15 U.S.C. § 70f (1964).
 
 
 104
 Thus, affirmance would do little to center responsibility for FTC litigation in the Office of the Attorney General, but would do much to limit the role of the FTC as a fact-finder — a role accepted by a majority and minority in Dean Foods as being an essential one. Nor is there persuasive evidence that Congress would view a centering of such responsibility as being necessary or desirable.
 
 
 105
 Furthermore, even if the Attorney General could control the FTC enforcement proceeding, an ordered pattern of antitrust litigation would not necessarily result since private litigants are authorized to bring treble damage actions. 15 U.S.C. § 15 (1964).[11]
 
 
 
 Notes:
 
 
 [1]
 "Agency" as defined in 28 U.S.C. § 451 (1966) includes "commission," unless the context otherwise dictates
 
 
 [2]
 15 U.S.C. § 46(b); United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); St. Regis Paper Co. v. United States, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961)
 
 
 [3]
 15 U.S.C. § 46(c) (1965); United States v. International Nickel Co. of Canada, 203 F.Supp. 739 (S.D.N.Y. 1962); 51 Cong.Rec. 8845 (63rd Cong. 2d Sess. 1914)
 
 
 [4]
 In 1930, the same parties appeared before the same Court. Federal Trade Commission v. Miller's National Federation, 60 App.D.C. 66, 47 F.2d 428 (1931). Judge Van Orsdel, who had also written the opinion in the first case, reversed a decree of the lower court enjoining the enforcement of a subpoena duces tecum. In an apparent reversal of his earlier decision (he did not refer to it), he held that the FTC has jurisdiction to compel attendance of witnesses, and that an objecting party can have his defenses when the FTC seeks enforcement of the subpoena in court. Thus, the second decision would not appear to limit the first decision insofar as the issue with which we are concerned
 
 
 [5]
 "MR. SHERLEY. I notice one other matter in which the House may be interested, and that is exclusive jurisdiction is given to the circuit court of appeals on the application by the commission or the party affected in reviewing the action of the commission, and then there is a subsequent provision which gives to the district courts power to issue writs of mandamus to compel enforcement of the order of the commission. Those provisions seem to be in conflict.
 "MR. COVINGTON. I think the conflict is more apparent than real, and, frankly, it was an oversight in the final draft. It is a fact that there is a slight conflict there. It is one, however, the court would have no difficulty in determining, because in the section [section 9] which embodies the method of dealing with processes of the commission, process for subpoena, process of enforcing ordinary orders respecting reports, process for production of documents, process for the punishment of contumacious witnesses, and all the other ordinary machinery for the actual operation of the commission investigations and hearings, there is found that provision. It might well be held to relate entirely to the proceedings under the section [section 9] to which the gentleman refers. And the exclusive jurisdiction conferred upon the circuit court of appeals is expressly related to and found in the section [section 5] which deals with unfair methods of competition in business. In addition thereto, as indicated — that section 9 to which the gentleman refers, was dealing entirely with methods and processes — it provides that the jurisdiction of the district courts of the United States shall be invoked only upon the application of the Attorney General of the United States, and only at the request of the commission. Assuming all the gentleman says, it would not become a conflict of jurisdiction until the application of the Attorney General to the district court after the request of the commission had been made. The commission would never use that method to enforce its unfair-competition orders.
 
 "MR. SHERLEY. I grant the gentleman that the jurisdiction of the district court can only be appealed to by the Attorney General of the United States on request of the commission, but assuming that it was so invoked and a writ of mandamus was sought, in resisting the issuance of that writ would not the proceeding of necessity vest the district court with jurisdiction that in another place in the bill it is stated to be exclusively with the circuit courts of appeal?
 
 
 "MR. COVINGTON. If such an unusual and unlikely situation as that should develop there would undoubtedly be a conflict of jurisdiction.
 
 
 "MR. SHERLEY. In other words, there is a conflict which can be avoided by the commission not taking advantage of the provision as to mandamus writs in the district court?
 
 
 "MR. COVINGTON. Certainly. And, moreover, the Attorney General himself cannot take advantage of that unless the commission itself desires to invoke the order and make application to him; so it is a conflict that is apparent rather than one that raises a substantial difficulty. It is also easy to correct, if it is desirable.
 
 "MR. SHERLEY. I understand.
 
 
 [6]
 Congressman Covington stated:
 "Especially valuable will be the provision that agents of the Commission shall have the right to examine the files of any corporation under investigation. This is a much more effective means of obtaining information than by a subpoena duces tecum, since before making use of the latter the prosecutor must know what records and documents to specify, whereas there may be in the possession of the corporation many records or documents material to the inquiry of which he has no knowledge and which can only be discovered by examination as this section authorizes. * * *"
 
 
 [51]
 Cong.Rec. 8845 (63d Cong.2d Sess., 1914)
 
 
 [7]
 The prior rule provided essentially the same:
 "§ 1.39 Noncompliance with investigational processes. In case of failure to comply with Commission investigational processes appropriate action may be initiated by the Commission, including actions for enforcement by the Commission or the Attorney General and forfeiture of penalties or criminal actions by the Attorney General."
 
 
 [16]
 C.F.R., § 1.39 (1963)
 
 
 [8]
 The Department of Justice does not contest the fact that legal counsel for the FTC made application for the enforcement of its subpoenas in the following cases: F. T. C. v. Harrell, 313 F.2d 854 (7th Cir. 1963); Moore Business Forms, Inc. v. F. T. C., 113 U.S.App.D.C. 231, 307 F.2d 188 (1962); Adams v. F. T. C., 296 F.2d 861 (8th Cir. 1961), cert. denied, 369 U.S. 864, 82 S.Ct. 1029, 8 L. Ed.2d 83 (1962); Flotill Products, Inc. v. F. T. C., 278 F.2d 850 (9th Cir.), cert. denied, 364 U.S. 920, 81 S.Ct. 284, 5 L. Ed.2d 260 (1960); F. T. C. v. Hallmark, Inc., 265 F.2d 433 (7th Cir. 1959) (U.S. Attorney appeared with FTC.); F. T. C. v. Rubin, 245 F.2d 60 (2d Cir. 1957); Federal Trade Commission v. Tuttle, 244 F.2d 605 (2d Cir.) (U.S. Attorney appeared with FTC.), cert. denied, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957); Federal Trade Commission v. Reed, 243 F.2d 308 (7th Cir.), cert. denied, 355 U.S. 823, 78 S.Ct. 29, 2 L. Ed.2d 37 (1957); F. T. C. v. Green, 252 F.Supp. 153 (S.D.N.Y.1966); F. T. C. v. Hunt Foods and Industries, Inc., 178 F.Supp. 448 (S.D.Cal.1959), aff'd 286 F.2d 803 (9th Cir. 1960), cert. denied, 365 U.S. 877, 81 S.Ct. 1027, 6 L. Ed.2d 190 (1961); Federal Trade Commission v. Waltham Watch Company, 169 F.Supp. 614 (S.D.N.Y.1959) (U.S. Attorney appeared with FTC.); Federal Trade Commission v. Scientific Living, Inc., 150 F.Supp. 495 (M.D.Pa.1957) (U.S. Attorney appeared with FTC.), appeal dismissed (3d Cir., order dated August 12, 1957), cert. denied, 355 U.S. 940, 78 S.Ct. 429, 2 L.Ed.2d 421 (1958); Federal Trade Commission v. Bowman, 149 F.Supp. 624 (N.D.Ill.1957), aff'd 248 F.2d 456 (7th Cir.); Federal Trade Commission v. Menzies, 145 F.Supp. 164 (D.Md.1956), aff'd 242 F.2d 81 (4th Cir. 1957) cert. denied 353 U.S. 957, 77 S.Ct. 863, 1 L.Ed.2d 908 (1957). As noted, the official reports do indicate that in some of the above cases, an attorney from the Department of Justice did in fact appear with the FTC. The mere appearance of the Department does not, however, negate the application being made by the FTC. These were the facts in the present case. 261 F.Supp. 215
 
 
 [9]
 A wide variety of views exists not only as to whether Congress intended to emphasize the independent character of the Commission and give it broad powers to proceed without regard to the policies of the executive departments of the government, but also as to whether the substantive provisions of the Act can be best informed by an independent Commission or by one which must receive its policy directions from the executive. See, Handler, The Constitutionality of Investigations by the Federal Trade Commission, 28 Colum.L.Rev. 708 (1928); Henderson, The Federal Trade Commission (1924); Hector, Hector Memorandum, 69 Yale L.J. 931 (1959); Kintner, The Current Ordeal of the Administrative Process: In Reply to Mr. Hector, 69 Yale L.J. 965; A Look at the Federal Administrative Agencies, supra; Sherwood, The Enforcement of Administrative Subpoenas, 44 Colum.L.Rev. 531, 539 (1944)
 
 
 [10]
 The records of this Court indicate that the legal staff of the FTC has represented it in "review petitions" heard before it since 1950. Guziak v. F. T. C., 361 F.2d 700 (1966); Benrus Watch Co. v. F. T. C., 352 F.2d 313 (1965); Brown Shoe Company v. F. T. C., 339 F.2d 45 (1964); National Trade Publications Service, Inc. v. F. T. C., 300 F.2d 790 (1962); Travelers Health Association v. F. T. C., 298 F.2d 820 (1962); Gellman v. F. T. C., 290 F.2d 666 (1961); Travelers Health Association v. F. T. C., 262 F.2d 241 (1959); Automobile Owners Safety Ins. Co. v. Federal Trade Com'n., 255 F.2d 295 (1958); American Life & Acc. Ins. Co. v. F. T. C., 255 F.2d 289 (1958); Chain Inst., Inc. v. Federal Trade Commission, 246 F.2d 231 (1957); Blanton Company v. F. T. C., 244 F.2d 720 (1957); The Salsbury Company v. F. T. C., 230 F.2d 954 (1956); Gamble-Skogmo, Inc. v. Federal Trade Commission, 211 F.2d 106 (1954); United Film Service, Inc. v. F. T. C., 204 F.2d 694 (1953); Zitserman v. F. T. C., 200 F.2d 519 (1952); Reid H. Ray Film Industries, Inc. v. F. T. C., 190 F.2d 207 (1951)
 
 
 [11]
 It appears that presently most treble damage actions merely follow in the wake of successful governmental actions. Livermore, Book Review, 50 Minn.L.Rev. 204 (1965)